ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, ex rel., :
and :
William L. Fry :          CIVIL ACTION NO: 04-316
1113 Garloch Drive :
Erie, PA 16505 :
                    Plaintiffs :
       v. :
                    :
FIRST INVESTMENT COMPANY :
OF COLUMBUS, OHIO, :          **FILED UNDER SEAL**
an Ohio Corporation, :
 and :
EVERHOME MORTGAGE COMPANY, :
formerly ALLIANCE MORTGAGE COMPANY, :
OF JACKSONVILLE, FLORIDA, :
a Florida Corporation, :
 and :
UNKNOWN MORTGAGE COMPANY A :
 and :
UNKNOWN MORTGAGE COMPANY B :
 and :
UNKNOWN MORTGAGE COMPANY C :
                    Defendants :

## COMPLAINT FOR MONETARY DAMAGES
## AND OTHER RELIEF UNDER THE FALSE CLAIM ACT

### INTRODUCTION

1.      This action, <u>FILED UNDER SEAL</u> pursuant to 31 U.S.C. § 3729, is an action to

recover monetary damages and civil penalties on behalf of the United States of America for false

claims made by the defendants, First Investment Company ("First Investment") and EverHome

Mortgage Company, formerly Alliance Mortgage Company, ("EverHome") to the United States

Government in violation of the False Claim Act (the "Act"), 31 U.S.C. § 3729 et seq.

- 1 -

2.     The Act provides that any person who knowingly submits a false or fraudulent claim for payment or approval to the United States Government is liable to the Government for a civil penalty of not less than $5,000.00 and not more than $10,000.00 for each such claim, plus three times the amount of the damages sustained by the Government because of the false claim.

3.     The Act allows any person having knowledge of false or fraudulent claims against the Government to bring an action in federal district court for himself and for the United States Government and to share in any recovery.

4.     The causes of action expounded in this suit were formulated and researched by William L. Fry, the ex rel. Plaintiff in this matter. The causes of action under the False Claims Act were suspected in June of 2003 but were then unproven. The majority of underlying facts were not received until July of 2004 with receipt of information requested through interrogatories and multiple orders of court with cover letter of court ordered information dated June 28, 2004, and information received from HUD through a Freedom of Information Act package of information dated July 7, 2004. Said received information indicates a continuing wrong consisting of monthly improper claims made to HUD from June of 1992 through February of 2000, and the improper handling of the received HUD program funds through present.

5.     As required under the Act, 31 U.S.C. section 3730(b)(2), Plaintiff is providing to the Attorney General of the Unites States and to the United States Attorney for the Western District of Pennsylvania, simultaneous with the filing of this complaint, a written summary of substantially all material evidence and information in his possession with respect to the allegations contained herein.

6.     As specified in more detail below, upon information and belief, each and every

- 2 -

month EverHome, since March of 1997 as sub-servicer of mortgages for First Investment, and

First Investment, prior to March of 1997 as mortgagee and servicer, submits to the United States

Department of Housing and Urban Development ("HUD") an original and a copy of a form HUD-

93102 ("Form 93102 ") titled: "Mortgagee's Certification and Application for Assistance or

Interest Reduction Payments", requesting "Subsidy Payments" from HUD pursuant to HUD's

Section 235 Housing Program. Both the original and the copy of the Form 93102 must contain

original signatures of an authorized mortgagee official.

7.    The Form 93102 and copy must be accompanied by Form HUD-300 ("Form 300")

titled: "Monthly Summary of Assistance Payments" which details as required all of the individual

"Subsidy Payment" billing amounts included in the Form 93102, one line item for each eligible

Section 235 mortgage.

8.    The payments made by HUD to EverHome and/or First Investment for HUD's

Section 235 Housing Program enables income eligible homeowners to obtain a monthly interest

subsidy from HUD thus lowering the monthly mortgage payment made by the individual

homeowner.

9.    Upon information and belief, in conjunction with the Subsidy Payment funds billed

by EverHome and/or First Investment to HUD pursuant to each monthly filing with HUD of the

Form 93102 with copy and Form 300, EverHome, since March of 1997 as sub-servicer of

mortgages for First Investment, and First Investment, prior to March of 1997 as mortgagee and

servicer, have also invoiced HUD a "Handling Charge" for each and every Section 235 mortgage

listed in the Form 300 and summarized in the Form 93102.

10.    Such Subsidy Payments and Handling Charges that were/are requested monthly on

the aforementioned Form 93102 with copy and Form 300 by EverHome and/or First Investment with the signing of the Form 93102 and its copy, and submission of said forms EverHome and First Investment are attesting to the continuing right to bill for such Subsidy and Handling Charges for each and every Section 235 mortgage listed.

11.    A mortgagor remains eligible for assistance in the form of subsidy under Section 235 until the mortgagee takes the first legal action required to initiate foreclosure or until some other event requires suspension or termination of the assistance payments contract.

12.    William L. Fry, the ex rel. Plaintiff, is/was a mortgagor with a mortgage among the over 6,000 HUD insured mortgages including an unknown number of 235 mortgages wherein First Investment is/was mortgagee at the time when EverHome became sub-servicer on or about March 1, 1997.

13.    Plaintiff Fry's mortgage has been in foreclosure since September of 1992 with a default date of June 1, 1992, and therefore, per the HUD regulations, has been ineligible for the Section 235 subsidy since the date of the initiation of the foreclosure action.

14.    Upon information and belief, as will be fully detailed below, with full knowledge of the foreclosure status of the Fry mortgage, First Investment continued to invoice to HUD and receive funds from HUD for the Fry mortgage for both the Subsidy and Handling Charges from June of 1992 until the time when EverHome became sub-servicer in March of 1997 with an accumulation of over $20,000 in HUD funds that had not been applied to the Fry mortgage.

15.    When EverHome became sub-servicer for First Investment, EverHome did not return the over $20,000 of HUD funds but continued to invoice to HUD for Subsidy and Handling Charges for the Fry mortgage and did receive said funds from HUD for both the

Subsidy and Handling Charges into 2000.

16.    First Investment and EverHome having full knowledge of the foreclosure status of the Fry mortgage is supported by the active participation in the courts of First Investment from 1992 through present in the Fry mortgage foreclosure and the active participation of EverHome from 1997 in the Fry Chapter 13 Bankruptcy specifically pertaining to the Fry mortgage with the filing of a Proof of Claim in EverHome's name and continuing litigation in the Fry Bankruptcy from 1997 through present.

17.    Upon information and belief, each filing of a Form 93102 and its copy by First Investment as mortgagee and servicer from June of 1992 through February of 1997 which included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim for payment and the copy has constituted a false document to support a false or fraudulent claim for payment.

18.    Upon information and belief, each filing of a Form 300 by First Investment as mortgagee and servicer from June of 1992 through February of 1997 which included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim for payment or has constituted a false document to support a false or fraudulent claim for payment.

19.    Upon information and belief, each filing of a Form 93102 and its copy by First Investment as mortgagee and servicer from June of 1992 through February of 1997 which included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim for payment and the copy has constituted a false document to support a false or fraudulent claim for payment.

20.    Upon information and belief, each filing of a Form 300 by First Investment as

- 5 -

mortgagee and servicer from June of 1992 through February of 1997 which included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim for payment or has constituted a false document to support a false or fraudulent claim for payment.

21.    Upon information and belief, each filing of a Form 93102 and its copy by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim for payment and the copy has constituted a false document to support a false or fraudulent claim for payment by First Investment.

22.    Upon information and belief, each filing of a Form 300 by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim for payment or has constituted a false document to support a false or fraudulent claim for payment by First Investment.

23.    Upon information and belief, each filing of a Form 93102 and its copy by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim for payment and the copy has constituted a false document to support a false or fraudulent claim for payment by First Investment.

24.    Upon information and belief, each filing of a Form 300 by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim for payment or has constituted a false document to support

a false or fraudulent claim for payment by First Investment.

25.    Upon information and belief, the contract titled "Sub-Servicing Agreement" dated February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage Company) as specifically relates to over 6000 HUD insured mortgages and an unknown number of Section 235 mortgages grants no servicing rights to EverHome and specifically states that First Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of EverHome as Sub-servicer.

26.    Records received from HUD under the Freedom of Information Act indicate that servicing was transferred from First Investment to EverHome on March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a "merger" between First Investment and EverHome.

27.    Records received from the Departments of State of Ohio and Florida each indicate that First Investment and EverHome are individual entities and that there is no record in either state of a merger between First Investment and EverHome.

28.    Upon information and belief, as it appears that there was no merger between First Investment and EverHome per the writtten contract titled "Sub-Servicing Agreement" between First Investment and EverHome and the records from the Departments of State of Ohio and Florida thus the reporting of a merger to HUD in whatever form has constituted a false document or documents to support a false or fraudulent claim for payment by First Investment.

29.    Upon information and belief, as it appears that there was no merger between First Investment and EverHome per the written contract titled "Sub-Servicing Agreement" between

First Investment and EverHome and the records from the Departments of State of Ohio and Florida thus the reporting of a merger to HUD in whatever form has constituted a false document or documents to support a false or fraudulent claim for payment by EverHome.

30.    Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome thus the reporting of a transfer of servicing to HUD in whatever form has constituted a false document or documents to support a false or fraudulent claim for payment by First Investment.

31.    Upon information and belief, it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome thus the reporting of a transfer of servicing to HUD in whatever form has constituted a false document or documents to support a false or fraudulent claim for payment by EverHome.

32.    Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every document filed by EverHome in EverHome's name, as said document(s) relates to any of the over 6000 mortgages or to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, has constituted false document(s) to support a false or

fraudulent claim for payment by EverHome.

33.    Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every document filed by EverHome in EverHome's name, as said document relates to any of the over 6000 mortgages or to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, has constituted false document(s) to support a false or fraudulent claim for payment by First Investment.

34.    Upon information and belief, as it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome thus each and every claim for insurance benefits under the HUD insurance as pertains to any of the over 6000 mortgages or to any of the unknown number of Section 235 mortgages wherein EverHome is named and First Investment was/is the mortgagee and/or servicer, has constituted a false or fraudulent claim for payment by EverHome.

35.    Upon information and belief, as it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome thus each and every claim for insurance benefits under the HUD insurance as pertains to any of the over 6000 mortgages or

to <u>any</u> of the unknown number of Section 235 mortgages wherein EverHome is named and First Investment was/is the mortgagee and/or servicer, has constituted a false or fraudulent claim for payment by First Investment.

36.    Upon information and belief, as it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, and EverHome is functioning under its own name as if it were the true servicer, party-in-interest and/or a party by merger to the contract for the HUD mortgage insurance thus the contract for the HUD mortgage insurance between First Investment and HUD has been violated and may not be enforcable.

37.    Upon information and belief, it appears that there has been a conspiracy between First Investment and EverHome to violate Federal Law as defined by the HUD regulations, the Code of Federal Regulations and the United States Code as each party to the written contract titled "Sub-Servicing Agreement", EverHome and First Investment, was/is a HUD approved mortgagee and servicer in its own right and thus were/are fully knowledgeable of the regulations and law governing the servicing of HUD insured mortgages including Section 235 mortgages.  As EverHome usurped the servicing rights which had not been granted by contract and/or law, and First Investment not only permitted EverHome to do so, First Investment profited by EverHome's actions and condoned said actions in multiple Courts of Law, thus it appears that a conspiracy does and has existed to violate both the letter and spirit of the Law.

38.    Upon information and belief, as it appears that there was no merger and no transfer of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the

- 10 -

United States Code between EverHome and various "UNKNOWN MORTGAGE COMPANIES" (excluding First Investment) and as per other written contracts which may or may not be titled "Sub-Servicing Agreement" between EverHome and the "UNKNOWN MORTGAGE COMPANIES", thus any document filed or any 235 subsidy or handling charge invoiced or any claim for insurance benefits under the HUD mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235 mortgages wherein EverHome is named and EverHome is not listed as mortgagee, may constitute a false document to support a false or fraudulent claim for payment or may constitute a false or fraudulent claim for payment by EverHome and equally constitute a false document and/or false or fraudulent claim for payment by the "UNKNOWN MORTGAGE COMPANIES".

## **PARTIES**

39.    Plaintiff, William L. Fry is an individual residing at 1113 Garloch Drive, Erie, PA 16505. Plaintiff brings this action for himself and on behalf of the United States Government.

40.    Defendant, First Investment Company, is an Ohio corporation with offices located at 1885 Northwest Boulevard, Columbus, OH 43212.

41.    Defendant, EverHome Mortgage Company, formerly named Alliance Mortgage Company, is a Florida corporation with offices located at 8100 Nations Way, Jacksonville, FL 32256.

42.    Defendant, "UNKNOWN MORTGAGE COMPANY A", is believed to be a mortgage company previously servicing HUD insured mortgages wherein it was mortgagee to said mortgages, and then contracted with EverHome Mortgage Company (formerly Alliance

Mortgage Company) through a "Sub-servicing Agreement" or a similarly worded document

wherein EverHome was to "Sub-service" an unknown number of HUD insured mortgages,

possibly including Section 235 mortgages, and neither by action as defined by HUD regulations,

the Code of Federal Regulations and the United States Code or by the wording of the "sub-

servicing" contract did "UNKNOWN MORTGAGE COMPANY A" transfer the servicing rights

to EverHome and the duties of EverHome as defined within the "Sub-servicing" contract

specifically limited the sub-servicing duties of EverHome.

     43.     Defendant, "UNKNOWN MORTGAGE COMPANY B", is believed to be a

mortgage company previously servicing HUD insured mortgages wherein it was mortgagee to

said mortgages, and then contracted with EverHome Mortgage Company (formerly Alliance

Mortgage Company) through a "Sub-servicing Agreement" or a similarly worded document

wherein EverHome was to "Sub-service" an unknown number of HUD insured mortgages,

possibly including Section 235 mortgages, and neither by action as defined by HUD regulations,

the Code of Federal Regulations and the United States Code or by the wording of the "sub-

servicing" contract did "UNKNOWN MORTGAGE COMPANY B" transfer the servicing rights

to EverHome and the duties of EverHome as defined within the "Sub-servicing" contract

specifically limited the sub-servicing duties of EverHome.

     44.     Defendant, "UNKNOWN MORTGAGE COMPANY C", is believed to be a

mortgage company previously servicing HUD insured mortgages wherein it was mortgagee to

said mortgages, and then contracted with EverHome Mortgage Company (formerly Alliance

Mortgage Company) through a "Sub-servicing Agreement" or a similarly worded document

wherein EverHome was to "Sub-service" an unknown number of HUD insured mortgages,



possibly including Section 235 mortgages, and neither by action as defined by HUD regulations, the Code of Federal Regulations and the United States Code or by the wording of the "sub-servicing" contract did "UNKNOWN MORTGAGE COMPANY C" transfer the servicing rights to EverHome and the duties of EverHome as defined within the "Sub-servicing" contract specifically limited the sub-servicing duties of EverHome.

## JURISDICTION AND VENUE

45.    This Court has jurisdiction over this action under 28 U.S.C. Sections 1331 and 3732.

46.    Venue in this Court is proper pursuant to 31 U.S.C. section 3732(a).

## HUD'S SECTION 235 PROGRAM

47.    HUD's Section 235 Program (the "235" Program) is defined under section 235 of the National Housing Act, 12 U.S.C. § 1715z.  The purpose of the section 235 program is to bring home ownership to low income groups by providing mortgage insurance and by making mortgage assistance or "subsidy" payments to the mortgagee on behalf of the mortgagor.  The assistance or "subsidy" payments are designed to reduce the cost of the mortgage to the equivalent costs of a mortgage bearing interest at a lower annual rate than the market rate available at the time of purchase, 12 U.S.C. §§ 1715z(c)(2) and 1715z(i).

48.    The HUD assistance or "subsidy" is based upon family composition and income adjusted annually or as income changes.

49.    In order to qualify for HUD assistance or "subsidy", both the mortgagee and

mortgagor must comply with all the applicable rules and regulations of the Department of

Housing and Urban Development, and submit to that agency's supervision. The operations of First

Investment, as mortgagee and servicer, and EverHome, as sub-servicer, insofar as they affect

section 235 homeowners like plaintiff, are extensively controlled by federal statute and regulation.

See e. g., 24 C.F.R. §§ 235.1 to 235.499.

     50.     The above 24 C.F.R. §§ 235.1 to 235.499 which are specific for section 235 type

mortgages are extensions of the administration and servicing regulations codified under 24 C.F.R.

203 which are controlling for the non-235 mortgages insured by HUD wherein First Investment is

mortgagee and servicer and EverHome, by contract with First Investment, is sub-servicer.

     51.     Servicing of HUD insured and Section 235 mortgages per the HUD Manual

4330.1 revision 5 "Administration of Insured Home Mortgages" ("The HUD Manual"):

> "1-1     GOAL. The Congress has adopted a national housing goal expressed as "a decent home and a suitable living environment for every American family".
>
>      A.     HUD's Role. HUD is charged with implementing the programs enacted by Congress to achieve this goal.
>
>      B.     Housing's Role. The Office of Housing's role is to further program objectives by exercising effective management practices while protecting the interests of HUD with prudent fiscal management. For the most part, these programs are carried out through the private mortgage markets, with HUD-approved mortgagees originating and servicing individual mortgages.
>
> 1-2     HUD MONITORING. This Handbook provides procedural standards and guidelines that must be followed when servicing an FHA/HUD-insured mortgage regardless of the entity holding and/or servicing the mortgage. The mortgagee's servicing operations will be monitored and, where necessary, corrective action will be required. Refusal to take the corrective action or continued noncompliance with HUD requirements will result in the Department taking appropriate action (i.e., including, but not necessarily limited to, an administrative and/or monetary sanction against that mortgagee (also, see Paragraphs 8-7F1 and 8-7G).
>
>      NOTE: Withdrawal of HUD approval may result in the mortgagee's debarment from doing business with any Federal government agency under

government-wide debarment regulations (24 CFR 24).

1-3    SERVICING OBJECTIVES. All servicing policies are directed toward achieving the following basic objectives:

   A.    implementing the national housing goal of "a decent home and a suitable living environment for every American family";

   B.    protecting HUD's interest in the insured mortgage (i.e., minimizing the probability of an insured mortgage terminating in default and foreclosure, and by minimizing HUD's loss where claims cannot be avoided);

   C.    encouraging private investment in HUD-insured home mortgages at the lowest effective cost to mortgagors; and

   D.    assuring an adequate standard of fair dealing among all participants in a HUD-insured mortgage transaction.

1-4.    MORTGAGEE RESPONSIBILITY (24 CFR 203.500). HUD regulations identify what the Secretary considers to be acceptable standards and "prudent servicing" when mortgagees service HUD-insured mortgages. HUD expects approved mortgagees to develop and implement policies and practices consistent with those standards and to prudently service loans.

   A.    Servicing Of Account. In accordance with 24 CFR 203.502, effective after January 10, 1994, all mortgagees who wish to service FHA-insured mortgages must be approved by the Secretary. The mortgagee shall remain fully responsible to the Secretary for proper servicing, and the actions of its servicer shall be considered to be the actions of the mortgagee. The servicer also shall be fully responsible to the Secretary for its actions as a servicer. ..."

"10-1    GENERAL (24 CFR 235). Under the Section 235 program, HUD assists mortgagors in making their monthly mortgage payments by paying directly to the mortgagee a portion of the mortgagor's monthly payment as long as the mortgagor remains eligible for subsidy under this program.

Servicing of Section 235 mortgages is generally the same as that described in the previous chapters of this handbook for mortgages insured under other HUD programs, except this program has added requirements due to the assistance payments contract (Subpart C of 24 CFR 235)."

"10-29    REPAYMENT OF OVERPAID ASSISTANCE (24 CFR 235.361).

   A.    Overpayments Caused By The Mortgagee. The mortgagee must refund to HUD all overpaid assistance and all handling charges for each month during which there was an overpayment, plus interest computed at the rate of seven percent per annum on the entire

- 15 -

amount from the date of the first overpayment when an
overpayment results from the following circumstances:
    1.       fraud or misrepresentation on the part of the mortgagee ..."

52.     HUD does not define in the context of HUD insured mortgages the entity of "Sub-

servicer" and thus HUD does not define any rights of a sub-servicer to act in its own name in

place of the true servicer nor does HUD grant any rights to a sub-servicer in the context of a party

to the mortgage insurance contract between HUD and the true servicer.  This is as per the request

to HUD by the offices of Congressman English for definition of "Sub-servicer" and/or "sub-

servicer rights".

53.     Billing of assistance and handling charges for Section 235 mortgages per the HUD

Manual 4330.1 revision 5 "Administration of Insured Home Mortgages" ("The HUD Manual"):

> "10-21  BILLING FOR ASSISTANCE/HANDLING CHARGES. In order to
> receive Section 235 Original, Revised, Revised with Recapture or Revised,
> Recapture/10 Program assistance payments and handling charges, mortgagees
> must submit billings to HUD on a monthly basis using an original and one copy of
> Form HUD-93102, Mortgagee's Certification and Application for Assistance or
> Interest Reduction Payments (Appendix 46). Both the original and the copy of the
> Form-HUD-93102 must contain original signatures of an authorized mortgagee
> official. ...
>
> C.     Submission/Completion Of Form HUD-300. A Form HUD-300,
>         Monthly Summary of Assistance Payments Due Under Sections
>         235(b), 235(j), or 235(i), or of Interest Reduction Payments Due
>         Under Section 236, (see Appendix 48) must accompany the
>         completed Form HUD-93102. ...
>
> E.     Mortgagee Liability (24 CFR 235.361(b)). Mortgagees are
>         responsible for the accuracy of the billings and shall be held liable
>         for fraud or false certification made on these billings (see Paragraph
>         10-28B). All billings must be signed by an authorized mortgagee
>         official. Improper billings may result in the imposition of substantial
>         financial penalties as the Program Fraud Civil Remedies Act applies
>         to assistance payments.
>               NOTE:Mortgagee signing officials should give special

- 16 -

attention to the meaning of the certification signed by
authorized mortgagee officials on Form HUD-93102. The
signing official is certifying, subject to the Program Fraud
Civil Remedies Act, that: ...

3.      the bill does not include amounts on behalf of
mortgagors not eligible for assistance in accordance
with provisions set forth in 24 CFR 235 and as set
forth in this Handbook; ...

A determination made upon review that certification to the above
was false may result in the imposition of substantial financial
penalties."

## COUNT 1

54.     Plaintiff repeats and realleges paragraphs 1 - 53.

55.     This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

56.     The mortgage of William L. Fry is a Section 235 mortgage with First Investment

as the mortgagee and servicer.

57.     Said Fry mortgage was originally eligible to receive the HUD Section 235 subsidy

in September of 1982 and continued eligibility through May of 1992.

58.     In September of 1992 First Investment initiated foreclosure proceedings against

the Fry mortgage with a notice of intention to foreclose with a default date of June 1, 1992.  This

was followed by the filing of a suit in foreclosure in December of 1992, the withdrawal of the suit

in April of 1993 which First Investment followed on the same day by the initiation of a second

foreclosure proceeding which again was followed by a second suit in foreclosure which was

reduced to judgment in 1996 and is now bound by the automatic stay from the United States



Bankruptcy Court of the Western District of Pennsylvania, sitting in Erie, pending related matters at numbers 97-11219, 02-1088 and 03-1020.

59.    Upon information and belief, First Investment was/is fully cognizant of the foreclosure status of the Fry mortgage as First Investment has continually pursued the foreclosure in the state and federal courts from 1992 through present.

60.    Upon information and belief, the Section 235 subsidy for the Fry mortgage should have been suspended upon the initiation of foreclosure in September of 1992 with a default date of June 1, 1992, but said subsidy was not suspended.

61.    Upon information and belief, First Investment as servicer continued to invoice the HUD monthly following the June of 1992 default date for both the Section 235 subsidy and the Handling Charges through February of 1997.

62.    Upon information and belief, EverHome as sub-servicer for First Investment continued to invoice HUD for both the Section 235 subsidy and Handling Charges from March of 1997 through February of 2000.

63.    Upon information and belief, there were 93 ineligible billings by First Investment as servicer and EverHome as sub-servicer for First Investment to HUD for the Section 235 subsidy monies for the Fry mortgage from June of 1992 through February of 2000 at $392 per month which accumulates to a total of $36,456 (93 months x $392).[1]

64.    Upon information and belief, there were 93 ineligible billings by First Investment as servicer and EverHome as sub-servicer for First Investment to HUD for the Section 235 Handling Charges for the Fry mortgage from June of 1992 through February of 2000 at $3 per month

---

[1]    All monetary amounts are rounded to the nearest dollar.

which accumulates to a total of $279 (93 months x $3).

65.    Per the HUD Manual at 10-29 A., as cited above, "The mortgagee must refund to HUD all overpaid assistance and all handling charges for each month during which there was an overpayment, plus interest computed at the rate of seven percent per annum on the entire amount from the date of the first overpayment ..." which, by calculation, yields interest from June of 1992 to time of filing in the amount of $21,856.

66.    Upon information and belief, by the actions of First Investment and Everhome from June 1, 1992, through October 1, 2004, the United States has been damaged in the approximate amount of $58,591 ($36,456 subsidy + $279 handling charges + $21,856 interest).

67.    Upon information and belief, by the actions of First Investment and Everhome from June 1, 1992, through October 1, 2004, the First Investment and EverHome are liable to the United States for three times the calculated damages of $58,591 in violation of 31 U.S.C. § 3729 for a calculated civil penalty of $175,773.

68.    Upon information and belief, each and every Form 300 submitted by First Investment to HUD containing the line item invoice for the Fry mortgage Section 235 subsidy information from June of 1992 through February of 1997 (57 monthly Form 300) has constituted a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment is liable for presenting 57 false Form 300 invoices for payment of ineligible Section 235 subsidy with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

69.    Upon information and belief, each and every Form 300 submitted by First Investment to HUD containing the line item invoice for the Fry mortgage Section 235 handling

charge information from June of 1992 through February of 1997 (57 monthly Form 300) has

constituted a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729.  Thus, First

Investment is liable for presenting 57 false Form 300 invoices for payment of ineligible Section

235 handling charges with a civil penalty of not less than $5,000 and not more than $10,000 for

each such document presented for a calculated minimum penalty of $285,000 to a maximum

penalty of $570,000.

70.    Upon information and belief, each and every original Form 93102 submitted by

First Investment to HUD containing Fry mortgage Section 235 subsidy information from June of

1992 through February of 1997 (57 monthly Form 93102) has constituted a false document in

support of a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729.  Thus, First

Investment is liable for presenting 57 false Form 93102 documents with a civil penalty of not less

than $5,000 and not more than $10,000 for each such document presented for a calculated

minimum penalty of $285,000 to a maximum penalty of $570,000.

71.    Upon information and belief, each and every required signed copy of Form 93102

submitted by First Investment to HUD containing Fry mortgage Section 235 subsidy information

from June of 1992 through February of 1997 (57 monthly signed copies Form 93102) has

constituted a false document in support of a false or fraudulent claim for payment in violation of

31 U.S.C. § 3729.  Thus, First Investment is liable for presenting 57 false signed copies of the

Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for

each such document presented for a calculated minimum penalty of $285,000 to a maximum

penalty of $570,000.

72.    Upon information and belief, each and every original Form 93102 submitted by

First Investment to HUD containing Fry mortgage Section 235 handling charge information from June of 1992 through February of 1997 (57 monthly Form 93102) has constituted a false document in support of a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment is liable for presenting 57 false Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

73.    Upon information and belief, each and every required signed copy of Form 93102 submitted by First Investment to HUD containing Fry mortgage Section 235 handling charge information from June of 1992 through February of 1997 (57 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment is liable for presenting 57 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

74.    Upon information and belief, each and every Form 300 submitted to HUD by EverHome as sub-servicer for First Investment containing the line item invoice for the Fry mortgage Section 235 subsidy information from March of 1997 through February of 2000 (36 monthly Form 300) has constituted a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome and is liable for presenting 36 false Form 300 invoices for payment of ineligible Section 235 subsidy with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum

- 21 -

penalty of $360,000.

75.    Upon information and belief, each and every Form 300 submitted to HUD by

EverHome as sub-servicer for First Investment containing the line item invoice for the Fry

mortgage Section 235 handling charge information from March of 1997 through February of

2000 (36 monthly Form 300) has constituted a false or fraudulent claim for payment in violation

of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the

actions of EverHome and is liable for presenting 36 false Form 300 invoices for payment of

ineligible Section 235 handling charges with a civil penalty of not less than $5,000 and not more

than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to

a maximum penalty of $360,000.

76.    Upon information and belief, each and every original Form 93102 submitted to

HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235

subsidy information from March of 1997 through February of 2000 (36 monthly Form 93102) has

constituted a false document in support of a false or fraudulent claim for payment in violation of

31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions

of EverHome and is liable for presenting 36 false Form 93102 documents with a civil penalty of

not less than $5,000 and not more than $10,000 for each such document presented for a

calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

77.    Upon information and belief, each and every required signed copy of Form 93102

submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage

Section 235 subsidy information from March of 1997 through February of 2000 (36 monthly

signed copies Form 93102) has constituted a false document in support of a false or fraudulent

- 22 -

claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome and is liable for presenting 36 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

78.    Upon information and belief, each and every original Form 93102 submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235 handling charge information from March of 1997 through February of 2000 (36 monthly Form 93102) has constituted a false document in support of a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome and is liable for presenting 36 false Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

79.    Upon information and belief, each and every required signed copy of Form 93102 submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235 handling charge information from March of 1997 through February of 2000 (36 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome and is liable for presenting 36 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

## COUNT 2

80.    Plaintiff repeats and realleges paragraphs 1 - 79.

81.    This count is specific to EverHome as sub-servicer for First Investment.

82.    The mortgage of William L. Fry is a Section 235 mortgage with First Investment as the mortgagee and servicer, originally eligible to receive the HUD Section 235 subsidy in September of 1982 and continued eligibility through May of 1992, the date of default of the initiated foreclosure in September of 1992 by First Investment which was followed by a second suit in foreclosure which was reduced to judgment in 1996 and is now bound by the automatic stay from the United States Bankruptcy Court of the Western District of Pennsylvania pending related matters at numbers 97-11219, 02-1088 and 03-1020.

83.    Upon information and belief, EverHome was/is fully cognizant of the foreclosure status of the Fry mortgage as EverHome (formerly Alliance Mortgage Company) filed a Proof of Claim under its own name in the Bankruptcy Court in 1997 and has been directly involved in litigation from 1997 through present in multiple federal courts and has continually pursued attempting to open the automatic stay in the Bankruptcy Court so as to complete the foreclosure in the state court.

84.    Upon information and belief, the Section 235 subsidy for the Fry mortgage should have been suspended upon the initiation of foreclosure in September of 1992 with a default date of June 1, 1992, but said subsidy was not suspended.

85.    Upon information and belief, First Investment as servicer continued to invoice the HUD monthly following the June of 1992 default date for both the Section 235 subsidy and the Handling Charges through February of 1997 whereupon EverHome became sub-servicer to First

Investment on March 1, 1997.

86.    Upon information and belief, EverHome as sub-servicer for First Investment and having accepted for sub-servicing the Fry mortgage in a foreclosure status did not return to HUD the $22,344 in subsidy funds, $171 in handling charges and $3,677 in interest for which the mortgage was previously ineligible and continued to invoice HUD for both the Section 235 subsidy and Handling Charges from March of 1997 through February of 2000.

87.    Upon information and belief, there were 57 ineligible billings by First Investment as servicer and 36 ineligible billings by EverHome as sub-servicer for First Investment to HUD for the Section 235 subsidy monies for the Fry mortgage from June of 1992 through February of 2000 at $392 per month which accumulates to a total of $36,456 (93 months x $392).

88.    Upon information and belief, there were 57 ineligible billings by First Investment as servicer and 36 ineligible billings by EverHome as sub-servicer for First Investment to HUD for the Section 235 Handling Charges for the Fry mortgage from June of 1992 through February of 2000 at $3 per month which accumulates to a total of $279 (93 months x $3).

89.    Per the HUD Manual at 10-29 A., as cited above, "The mortgagee must refund to HUD all overpaid assistance and all handling charges for each month during which there was an overpayment, plus interest computed at the rate of seven percent per annum on the entire amount from the date of the first overpayment ..." which, by calculation, yields interest from June of 1992 to time of filing in the amount of $21,856.

90.    Upon information and belief, by the actions of First Investment and Everhome from June 1, 1992, through October 1, 2004, the United States has been damaged in the approximate amount of $58,591 ($36,456 subsidy + $279 handling charges + $21,856 interest).

- 25 -

91.     Upon information and belief, by the actions of First Investment and Everhome from June 1, 1992, through October 1, 2004, the First Investment and EverHome are liable to the United States for three times the calculated damages of $58,591 in violation of 31 U.S.C. § 3729 for a calculated civil penalty of $175,773.

92.     Upon information and belief, each and every Form 300 submitted to HUD by EverHome as sub-servicer for First Investment containing the line item invoice for the Fry mortgage Section 235 subsidy information from March of 1997 through February of 2000 (36 monthly Form 300) has constituted a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for presenting 36 false Form 300 invoices for payment of ineligible Section 235 subsidy with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

93.     Upon information and belief, each and every Form 300 submitted to HUD by EverHome as sub-servicer for First Investment containing the line item invoice for the Fry mortgage Section 235 handling charge information from March of 1997 through February of 2000 (36 monthly Form 300) has constituted a false or fraudulent claim for payment in violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for presenting 36 false Form 300 invoices for payment of ineligible Section 235 handling charges with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

94.     Upon information and belief, each and every original Form 93102 submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235

subsidy information from March of 1997 through February of 2000 (36 monthly Form 93102) has

constituted a false document in support of a false or fraudulent claim for payment in violation of

31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for presenting

36 false Form 93102 documents with a civil penalty of not less than $5,000 and not more than

$10,000 for each such document presented for a calculated minimum penalty of $180,000 to a

maximum penalty of $360,000.

95.    Upon information and belief, each and every required signed copy of Form 93102

submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage

Section 235 subsidy information from March of 1997 through February of 2000 (36 monthly

signed copies Form 93102) has constituted a false document in support of a false or fraudulent

claim for payment in violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own

actions and is liable for presenting 36 false signed copies of the Form 93102 documents with a

civil penalty of not less than $5,000 and not more than $10,000 for each such document presented

for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

96.    Upon information and belief, each and every original Form 93102 submitted to

HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235

handling charge information from March of 1997 through February of 2000 (36 monthly Form

93102) has constituted a false document in support of a false or fraudulent claim for payment in

violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for

presenting 36 false Form 93102 documents with a civil penalty of not less than $5,000 and not

more than $10,000 for each such document presented for a calculated minimum penalty of

$180,000 to a maximum penalty of $360,000.

97.     Upon information and belief, each and every required signed copy of Form 93102

submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage

Section 235 handling charge information from March of 1997 through February of 2000 (36

monthly signed copies Form 93102) has constituted a false document in support of a false or

fraudulent claim for payment in violation of 31 U.S.C. § 3729.  Thus, EverHome is responsible

for its own actions and is liable for presenting 36 false signed copies of the Form 93102

documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such

document presented for a calculated minimum penalty of $180,000 to a maximum penalty of

$360,000.


## COUNT 3

98.     Plaintiff repeats and realleges paragraphs 1 - 97.

99.     This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

100.    Upon information and belief, the contract titled "Sub-Servicing Agreement" dated

February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage

Company) as specifically relates to over 6000 HUD insured mortgages and an unknown number

of Section 235 mortgages grants no servicing rights to EverHome and specifically states that First

Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And

further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of

EverHome as Sub-servicer. AND, Records received from HUD under the Freedom of

Information Act indicate that servicing was transferred from First Investment to EverHome on

March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a

"merger" between First Investment and EverHome, BUT, records received from the Departments

of State of Ohio and Florida each indicate that First Investment and EverHome are individual

entities and that there is no record in either state of a merger between First Investment and

EverHome.

101.    Upon information and belief, both First Investment and EverHome as being

mortgagees and HUD approved servicers in their own right, each is fully knowledgeable of the

HUD regulations as to servicing of HUD insured mortgages, including Section 235 mortgages,

and the HUD regulations concerning the transfer of servicing from one HUD approved servicer to

another HUD approved servicer and the civil penalties for the violation of said regulations.

102.    Upon information and belief, as it appears that there was no lawful transfer of

servicing between First Investment and EverHome as defined by the HUD regulations, the Code

of Federal Regulations or the United States Code and the writtten contract titled "Sub-Servicing

Agreement" between First Investment and EverHome thus the reporting of a transfer of servicing

to HUD in whatever form has constituted a false document or documents to support a false or

fraudulent claim for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus, First

Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer

and is liable for presenting an unknown number of false documents with a civil penalty of not less

than $5,000 and not more than $10,000 for each such document presented.

103.    Upon information and belief, as it appears that there was no merger between First

Investment and EverHome per the writtten contract titled "Sub-Servicing Agreement" between

First Investment and EverHome and the records from the Departments of State of Ohio and

- 29 -

Florida thus the reporting of a merger to HUD in whatever form has constituted a false document

or documents to support a false or fraudulent claim for payment by First Investment in violation

of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the

actions of EverHome as sub-servicer and is liable for presenting an unknown number of false

documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such

document presented.

104.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> document

filed by EverHome in EverHome's name, as said document(s) relates to <u>any</u> of the over 6000

mortgages or to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment

was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has

constituted false document(s) to support a false or fraudulent claim for payment by First

Investment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is

responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown

number of false documents with a civil penalty of not less than $5,000 and not more than $10,000

for each such document presented.

105.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every line item</u> on

- 30 -

each and every Form 300 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of an invoice to HUD for Section 235 subsidy as a false or fraudulent claim for payment individually for each line item by First Investment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented and the unknown amounts of subsidy claimed and/or received, and interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the amount of the damages.

106.    Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every line item on each and every Form 300 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 handling charges by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of an invoice to HUD for Section 235 handling charges as a false or fraudulent claim for payment individually for each line item by First

Investment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented and the unknown amounts of subsidy claimed and/or received, and interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the amount of the damages.

107. Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every original Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 subsidy as a false or fraudulent claim for payment by First Investment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

108. Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of

- 32 -

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> signed copy

of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of

2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates

to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the

mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false

document(s) in the context of false document in support of an invoice to HUD for Section 235

subsidy as a false or fraudulent claim for payment by First Investment in violation of 31 U.S.C. §

3729.  Thus, First Investment as mortgagee and servicer is responsible for the actions of

EverHome as sub-servicer and is liable for presenting an unknown number of false documents

with a civil penalty of not less than $5,000 and not more than $10,000 for each such document

presented.

109.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> original

Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of

2004) as to Section 235 handling charges by EverHome in EverHome's name, as said

document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First

Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer,

has constituted false document(s) in the context of false document in support of an invoice to

HUD for Section 235 handling charges as a false or fraudulent claim for payment by First

Investment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

110.    Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every signed copy of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 handling charges by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 handling charges as a false or fraudulent claim for payment by First Investment in violation of 31 U.S.C. § 3729. Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

## COUNT 4

111.    Plaintiff repeats and realleges paragraphs 1 - 110.

112.    This count is specific to EverHome as sub-servicer for First Investment.

113.    Upon information and belief, the contract titled "Sub-Servicing Agreement" dated

February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage

Company) as specifically relates to over 6000 HUD insured mortgages and an unknown number

of Section 235 mortgages grants no servicing rights to EverHome and specifically states that First

Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And

further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of

EverHome as Sub-servicer. AND, Records received from HUD under the Freedom of

Information Act indicate that servicing was transferred from First Investment to EverHome on

March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a

"merger" between First Investment and EverHome, BUT, records received from the Departments

of State of Ohio and Florida each indicate that First Investment and EverHome are individual

entities and that there is no record in either state of a merger between First Investment and

EverHome.

114.    Upon information and belief, both First Investment and EverHome as being

mortgagees and HUD approved servicers in their own right, each is fully knowledgeable of the

HUD regulations as to servicing of HUD insured mortgages, including Section 235 mortgages,

and the HUD regulations concerning the transfer of servicing from one HUD approved servicer to

another HUD approved servicer and the civil penalties for the violation of said regulations.

115.    Upon information and belief, as it appears that there was no lawful transfer of

servicing between First Investment and EverHome as defined by the HUD regulations, the Code

of Federal Regulations or the United States Code and the writtten contract titled "Sub-Servicing

Agreement" between First Investment and EverHome thus the reporting of a transfer of servicing

to HUD in whatever form has constituted a false document or documents to support a false or fraudulent claim for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

116.   Upon information and belief, as it appears that there was no merger between First Investment and EverHome per the writtten contract titled "Sub-Servicing Agreement" between First Investment and EverHome and the records from the Departments of State of Ohio and Florida thus the reporting of a merger to HUD in whatever form has constituted a false document or documents to support a false or fraudulent claim for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

117.   Upon information and belief, as it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every document filed by EverHome in EverHome's name, as said document(s) relates to any of the over 6000 mortgages or to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) to support a false or fraudulent claim for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each

- 36 -

such document presented.

118.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus each and every line item on

each and every Form 300 filed (approximately 92 monthly filings from March of 1997 through

October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said

document(s) relates to any of the unknown number of Section 235 mortgages wherein First

Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer,

has constituted false document(s) in the context of an invoice to HUD for Section 235 subsidy as

a false or fraudulent claim for payment individually for each line item by EverHome in violation of

31 U.S.C. § 3729.  Thus, EverHome is liable for presenting an unknown number of false

documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such

document presented and the unknown amounts of subsidy claimed and/or received, and interest

from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the

amount of the damages.

119.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus each and every line item on

each and every Form 300 filed (approximately 92 monthly filings from March of 1997 through

October of 2004) as to Section 235 handling charges by EverHome in EverHome's name, as said

document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First

Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer,

has constituted false document(s) in the context of an invoice to HUD for Section 235 handling

charges as a false or fraudulent claim for payment <u>individually for each line item</u> by EverHome in

violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of

false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each

such document presented and the unknown amounts of subsidy claimed and/or received, and

interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times

the amount of the damages.

　　　　120.　　Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> original

Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of

2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates

to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the

mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false

document(s) in the context of false document in support of an invoice to HUD for Section 235

subsidy as a false or fraudulent claim for payment by EverHome in violation of 31 U.S.C. § 3729.

Thus, EverHome is liable for presenting an unknown number of false documents with a civil

penalty of not less than $5,000 and not more than $10,000 for each such document presented.

　　　　121.　　Upon information and belief, as it appears that there was no transfer of servicing

- 38 -

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> signed copy

of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of

2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates

to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the

mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false

document(s) in the context of false document in support of an invoice to HUD for Section 235

subsidy as a false or fraudulent claim for payment by EverHome in violation of 31 U.S.C. § 3729.

Thus, EverHome is liable for presenting an unknown number of false documents with a civil

penalty of not less than $5,000 and not more than $10,000 for each such document presented.

122.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> original

Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of

2004) as to Section 235 handling charges by EverHome in EverHome's name, as said

document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First

Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer,

has constituted false document(s) in the context of false document in support of an invoice to

HUD for Section 235 handling charges as a false or fraudulent claim for payment by EverHome in

violation of 31 U.S.C. § 3729.  Thus, EverHome is liable for presenting an unknown number of

false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each

such document presented.

123.    Upon information and belief, as it appears that there was no transfer of servicing

rights between First Investment and EverHome as defined by the HUD regulations, the Code of

Federal Regulations or the United States Code and as per the written contract titled "Sub-

Servicing Agreement" between First Investment and EverHome, thus each and every signed copy

of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of

2004) as to Section 235 handling charges by EverHome in EverHome's name, as said

document(s) relates to any of the unknown number of Section 235 mortgages wherein First

Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer,

has constituted false document(s) in the context of false document in support of an invoice to

HUD for Section 235 handling charges as a false or fraudulent claim for payment by EverHome in

violation of 31 U.S.C. § 3729.  Thus, EverHome is liable for presenting an unknown number of

false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each

such document presented.


## COUNT 5

124.    Plaintiff repeats and realleges paragraphs 1 - 123.

125.    This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

126.    Upon information and belief, the contract titled "Sub-Servicing Agreement" dated

February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage

Company) as specifically relates to over 6000 HUD insured mortgages and an unknown number

of Section 235 mortgages grants no servicing rights to EverHome and specifically states that First

Investment as mortgagee continues to be the Servicer and retains all such servicing rights. And

further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of

EverHome as Sub-servicer. AND, Records received from HUD under the Freedom of

Information Act indicate that servicing was transferred from First Investment to EverHome on

March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a

"merger" between First Investment and EverHome, BUT, records received from the Departments

of State of Ohio and Florida each indicate that First Investment and EverHome are individual

entities and that there is no record in either state of a merger between First Investment and

EverHome.

127. Upon information and belief, both First Investment and EverHome as being

mortgagees and HUD approved servicers in their own right, each is fully knowledgeable of the

HUD regulations as to servicing of HUD insured mortgages, including Section 235 mortgages,

and the HUD regulations concerning the transfer of servicing from one HUD approved servicer to

another HUD approved servicer and the civil penalties for the violation of said regulations.

128. Upon information and belief, as it appears that there was no merger and no transfer

of servicing rights between First Investment and EverHome as defined by the HUD regulations,

the Code of Federal Regulations or the United States Code and as per the written contract titled

"Sub-Servicing Agreement" between First Investment and EverHome, and EverHome is

functioning under its own name as if it were the true servicer, party-in-interest and/or a party by

merger to the contract for the HUD mortgage insurance, thus the contract for the HUD mortgage

- 41 -

insurance between First Investment and HUD has been violated with the full knowledge of First

Investment and may no longer be enforcable.


## COUNT 6

129.    Plaintiff repeats and realleges paragraphs 1 - 128.

130.    This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

131.    Upon information and belief, the contract titled "Sub-Servicing Agreement" dated

February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage

Company) as specifically relates to over 6000 HUD insured mortgages and an unknown number

of Section 235 mortgages grants no servicing rights to EverHome and specifically states that First

Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And

further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of

EverHome as Sub-servicer. AND, Records received from HUD under the Freedom of

Information Act indicate that servicing was transferred from First Investment to EverHome on

March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a

"merger" between First Investment and EverHome, BUT, records received from the Departments

of State of Ohio and Florida each indicate that First Investment and EverHome are individual

entities and that there is no record in either state of a merger between First Investment and

EverHome.

132.    Upon information and belief, it appears that there has been a conspiracy between

First Investment and EverHome to violate Federal Law as defined by the HUD regulations, the

Code of Federal Regulations and the United States Code as each party to the written contract titled "Sub-Servicing Agreement", EverHome and First Investment, was/is a HUD approved mortgagee and servicer in its own right and thus were/are fully knowledgeable of the regulations and law governing the servicing of HUD insured mortgages including Section 235 mortgages. As EverHome usurped the servicing rights which had not been granted by contract and/or law, and First Investment not only permitted EverHome to do so, First Investment profited by EverHome's actions and condoned said actions in multiple Courts of Law, thus it appears that a conspiracy does and has existed to violate both the letter and spirit of the Law and specifically in the violation of 31 U.S.C. § 3729.


## COUNT 7

133.    Plaintiff repeats and realleges paragraphs 1 - 132.

134.    This count is specific to "UNKNOWN MORTGAGE COMPANY A" with its responsibilities as mortgagee, servicer and the responsibility for the actions of EverHome as sub-servicer.

135.    Upon information and belief, as it appears that there was no merger and no transfer of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the United States Code between EverHome and "UNKNOWN MORTGAGE COMPANY A" and as per other written contracts which may or may not be titled "Sub-Servicing Agreement" between EverHome and the "UNKNOWN MORTGAGE COMPANY A", thus any document filed or any 235 subsidy or handling charge invoiced or any claim for insurance benefits under the HUD mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235

mortgages wherein EverHome is named and EverHome is not listed as mortgagee, may constitute

a false document to support a false or fraudulent claim for payment or may constitute a false or

fraudulent claim for payment by EverHome and equally constitute a false document and/or false

or fraudulent claim for payment by the "UNKNOWN MORTGAGE COMPANY A" in violation

of 31 U.S.C. § 3729.


## COUNT 8

136.    Plaintiff repeats and realleges paragraphs 1 - 135.

137.    This count is specific to "UNKNOWN MORTGAGE COMPANY B" with its

responsibilities as mortgagee, servicer and the responsibility for the actions of EverHome as sub-

servicer.

138.    Upon information and belief, as it appears that there was no merger and no transfer

of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the

United States Code between EverHome and "UNKNOWN MORTGAGE COMPANY B" and as

per other written contracts which may or may not be titled "Sub-Servicing Agreement" between

EverHome and the "UNKNOWN MORTGAGE COMPANY B", thus any document filed or any

235 subsidy or handling charge invoiced or any claim for insurance benefits under the HUD

mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235

mortgages wherein EverHome is named and EverHome is not listed as mortgagee, may constitute

a false document to support a false or fraudulent claim for payment or may constitute a false or

fraudulent claim for payment by EverHome and equally constitute a false document and/or false

or fraudulent claim for payment by the "UNKNOWN MORTGAGE COMPANY B" in violation

of 31 U.S.C. § 3729.

## COUNT 9

139.    Plaintiff repeats and realleges paragraphs 1 - 138.

140.    This count is specific to "UNKNOWN MORTGAGE COMPANY C" with its

responsibilities as mortgagee, servicer and the responsibility for the actions of EverHome as sub-

servicer.

141.    Upon information and belief, as it appears that there was no merger and no transfer

of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the

United States Code between EverHome and "UNKNOWN MORTGAGE COMPANY C" and as

per other written contracts which may or may not be titled "Sub-Servicing Agreement" between

EverHome and the "UNKNOWN MORTGAGE COMPANY C", thus any document filed or any

235 subsidy or handling charge invoiced or any claim for insurance benefits under the HUD

mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235

mortgages wherein EverHome is named and EverHome is not listed as mortgagee, may constitute

a false document to support a false or fraudulent claim for payment or may constitute a false or

fraudulent claim for payment by EverHome and equally constitute a false document and/or false

or fraudulent claim for payment by the "UNKNOWN MORTGAGE COMPANY C"  in violation

of 31 U.S.C. § 3729.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against defendants and prays that this Court:

(i)     Enter judgment against Defendants in an amount equal to three (3) times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than Five Thousand Dollars ($5000) and not more than Ten Thousand Dollars ($10,000) for each violation by Defendant of 37 U.S.C. § 3729;

(ii)    Award Plaintiff William L. Fry the maximum amount permitted by Section 3730(d) of the False Claims Act and/or any other provisions of applicable law;

(iii)   Award Plaintiff William L. Fry all costs of this action, including attorney fees and court costs; and

(iv)    Award any other relief that is just and proper.


Date:  __October 27, 2004__


                              Respectfully submitted:

                              William L. Fry
                              by Counsel

                               /S/ Malcolm L. Pollard
                              Malcolm L. Pollard, Esquire
                              Pa. Supreme Court Number 34906
                              4845 Westlake Road #119
                              Erie, PA 16505
                              Telephone: 814-838-8258
                              Telecopier: 814-838-8452


- 46 -

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, <u>ex rel.</u>,    :
and                                          :
William L. Fry                               :    CIVIL ACTION NO: _____
                              Plaintiffs     :
        v.                                   :
FIRST INVESTMENT COMPANY, et al.             :
                              Defendants     :

## <u>AFFIDAVIT OF WILLIAM L. FRY</u>

Before me the undersigned authority, a Notary Public, in and for said state and county,

personally appeared  William L. Fry  of  1113 Garloch Drive, Erie, PA 16505 , who, being sworn

according to law, deposes and says the following:

I,  William L. Fry , the Plaintiff in the matter before this court, certify that the statements

made in this COMPLAINT FOR MONETARY DAMAGES AND OTHER RELIEF UNDER

THE FALSE CLAIM ACT are true and correct to the best of my knowledge and belief.  I

understand that false statements herein are made subject to the penalties of 18 Pa.C.S. 4904,

relating to unsworn falsification to authorities.


_____10/27/2004_____                    _____
Date                                        William L. Fry


SWORN TO and subscribed before me this____27____day

of ___October_____, 2004 .

Notarial Seal
Malcolm L. Pollard, Notary Public
Millcreek Twp., Erie County
My Commission Expires Nov. 11, 2004

_____
Notary Public

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., | : | |
| and | : | |
| William L. Fry | : | CIVIL ACTION NO: _____ |
| Plaintiffs | : | |
| v. | : | |
| FIRST INVESTMENT COMPANY, et al. | : | |
| Defendants | : | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this __27th__ day of __October__, __2004__, a true

and correct copy of COMPLAINT FOR MONETARY DAMAGES AND OTHER RELIEF

UNDER THE FALSE CLAIM ACT were forwarded by U.S. mail, postage prepaid to all parties

as indicated below:

| U. S. Department of Justice<br>Office of the Attorney General<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Michael F. Hurtz, Director<br>Commercial Litigation Branch -<br>  Civil Division<br>U. S. Department of Justice<br>Office of the Attorney General,<br>601 D Street, NW - Room 9902<br>Washington, DC 20004 | Marshall J. Piccinini, Esquire<br>United States Attorney<br>Federal Court House Building<br>17 S. Park Row - Room A330<br>Erie, PA 16501 |
|---|---|---|

By: __/S/ Malcolm L. Pollard__
    Malcolm L. Pollard, Esquire
    Pa. Supreme Court Number 34906
4845 Westlake Road #119
Erie, PA 16505
Telephone: 814-838-8258
Telecopier: 814-838-8452