UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, ex. rel.
WILLIAM L. FRY,

     Relator,

v.

FIRST INVESTMENT COMPANY, et al.,

     Defendants.

CIVIL ACTION
No. 04-316
(Judge McLaughlin)

**DEFENDANTS' JOINT MEMORANDUM IN SUPPORT
OF THEIR MOTIONS TO DISMISS**

# TABLE OF CONTENTS

**ITEM**                                                                    **PAGE**

TABLE OF CONTENTS ....................................................................................................... i
INTRODUCTION............................................................................................................. 1
BACKGROUND ............................................................................................................... 1

    A.    Procedural History. ...............................................................................1

    B.    Summary Of The Complaint....................................................................2

ARGUMENT...................................................................................................................... 3

I.    RELATOR'S FCA CLAIMS (COUNTS 1-4, AND 6) ARE
    JURISDICTIONALLY BARRED, AS THEY ARE BASED UPON PUBLIC
    DISCLOSURES................................................................................................3

II.    RELATOR'S FCA CLAIMS RELATING TO HIS SPECIFIC LOAN (COUNTS
    1 AND 2) MUST BE DISMISSED FOR THE ADDITIONAL REASONS THAT
    RELATOR HAS FAILED TO PLEAD SCIENTER, FAILED TO PLEAD WITH
    PARTICULARITY, AND FAILED TO STATE A VIABLE, TIMELY CLAIM.............5

    A.    Relator's FCA Claims Fail Because They Do Not Allege Scienter. .......................6

    B.    Relator Fails To Allege An FCA Claim Based On His Loan With The
        Requisite Particularity...............................................................................7

    C.    Relator Has Not Stated A Viable Claim In Counts 1 And 2 Against First
        Investment For Submissions Relating To His Loan After February 1997. .............8

    D.    Relator's Claims Regarding Submissions Prior To October 27, 1998, Are
        Time-Barred. ......................................................................................9

III.    RELATOR'S FCA CLAIMS ARISING OUT OF THE SUB-SERVICING
    RELATIONSHIP BETWEEN FIRST INVESTMENT AND EVERHOME
    (COUNTS 3 AND 4) SHOULD BE DISMISSED FOR THE ADDITIONAL
    REASON THAT THEY FAIL TO IDENTIFY A SINGLE RECORD OR CLAIM
    THAT IS FALSE, MUCH LESS PLEAD SUCH CLAIM WITH
    PARTICULARITY..........................................................................................10

    A.    The Complaint Fails To Allege With Requisite Particularity That
        Defendants Submitted A "False Record." .............................................11

    B.    Relator Does Not Identify Any "False Claim" Actually Paid As A Result
        Of A Purported False Record...............................................................13

## TABLE OF CONTENTS

**ITEM**                                                                                              **PAGE**

      C.    Mere Noncompliance With A HUD Regulation Does Not Itself Constitute
              An FCA Violation..................................................................................................14

IV.    RELATOR'S FCA CONSPIRACY CLAIM (COUNT 6) ALSO MUST BE
       DISMISSED BECAUSE IT NEITHER ALLEGES A CONSPIRACY UNDER
       THE FCA NOR IS SUFFICIENTLY PLED. ...................................................15

V.     RELATOR'S CLAIM FOR BREACH OF CONTRACT (COUNT 5) SHOULD
       BE DISMISSED. ............................................................................................17

**CONCLUSION** ...................................................................................................... **18**

### DEFENDANTS' JOINT MEMORANDUM IN SUPPORT
### OF THEIR MOTIONS TO DISMISS

Defendants First Investment Company ("First Investment") and EverHome Mortgage

Company, formerly Alliance Mortgage Company ("EverHome") (collectively, "Defendants")

submit this brief in support of their Motions to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(6), and 9(b).

### INTRODUCTION

William L. Fry, as a *qui tam* relator, has brought this False Claims Act ("FCA") case

based on a technical collections error that was remedied years ago. Indeed, the government itself

has refused to intervene, leaving Relator Fry alone in his efforts to obtain an undeserved

windfall. Relator's claims, however, should be dismissed in their entirety, as the Court lacks

subject matter jurisdiction. Relator's claims also lack merit for failure to state a claim under

Rule 12(b)(6) and failure to plead with the required particularity under Rule 9(b). Moreover, on

the face of Relator's allegations, it is evident that many, if not most, of his claims are time-barred

and, as such, should be dismissed. In short, Relator's claims have no legal or factual merit. This

Court should foreclose Relator's effort to obtain a windfall and dismiss this action in its entirety.

### BACKGROUND

#### A.    **Procedural History.**

Relator Fry filed this action on or about October 27, 2004. The government filed notice

of its decision *declining to intervene* on April 5, 2006, and this Court unsealed the Complaint the

following day. Despite the government's decision *not* to intervene, Relator has elected to

continue to prosecute this matter against the Defendants in the name of the United States as a *qui*

*tam* relator.

**B.**    **Summary Of The Complaint.**

Relator's claims relate to subsidies paid by the United States Department of Housing and Urban Development ("HUD") as part of its Section 235 program, a program authorized by § 235(i) of the National Housing Act ("NHA"), 12 U.S.C. § 1715z, to assist low-income mortgagors. Under the Section 235 program, HUD pays the mortgagee a subsidy to be applied to the loan interest of a qualifying low-income mortgagor, thus reducing the mortgagor's monthly payment. *Id.* To reimburse mortgagees for the expense of processing the HUD subsidy, the regulations implementing § 235(i) of the NHA authorize mortgagees to charge a monthly handling fee for each HUD Section 235 loan. 24 C.F.R. § 235.335.

Relator's claims come in two varieties, neither of which states a viable claim under the FCA. First, in Counts 1 and 2, Relator alleges that Defendants sought to collect Section 235 subsidies for Relator's mortgage after Relator no longer qualified for the program. Specifically, Relator claims that he should have been terminated from the Section 235 program when his loan was foreclosed upon in June 1992. Complaint, ¶ 60. Relator alleges that, because Defendants were not eligible for the subsidy payments or handling fees post-foreclosure, each submission after June 1992 for the subsidy and handling fee constituted a false claim. Complaint, ¶¶ 17-24. Because HUD required the Defendants to submit multiple and duplicate forms in connection with each month's subsidy and handling fee, Relator claims that each line item for the subsidy and each line item for the handling charge on each such form is a separate false claim. *Id.* As a result, Relator alleges six false claims in connection with each monthly subsidy.

Relator's second group of allegations (Counts 3 through 6) concerns the relationship between First Investment and EverHome. Relator alleges that Defendants entered a "Sub-Servicing Agreement" whereby EverHome sub-serviced approximately 6,000 HUD-insured loans for which First Investment was the servicer. Complaint, ¶¶ 12, 25. Relator's theory is not

2

entirely clear, but he seems to claim that the sub-servicing was impermissible as executed and caused every subsequent document relating to these loans that was filed with HUD to be a false claim *or* a false document in support of a false claim. Complaint, ¶ 132; *see also* Complaint, ¶ 52. Relator also claims that the Defendants conspired to usurp these servicing rights in violation of law *and*, remarkably, that the sub-servicing relationship was a breach of the contract for HUD mortgage insurance between First Investment and HUD. Complaint, ¶ 132.[1]

Relator's claims are wholly without merit and should be dismissed as a matter of law.

## ARGUMENT

**I.    RELATOR'S FCA CLAIMS (COUNTS 1-4, AND 6) ARE JURISDICTIONALLY BARRED, AS THEY ARE BASED UPON PUBLIC DISCLOSURES.**

The *qui tam* provisions of the False Claims Act allow, in certain circumstances, private parties to bring suit on behalf of the United States. The statute is explicit, however, that *qui tam* suits may *not* be based upon public disclosures, unless the relator is an "original source" of the information.[2] 31 U.S.C. § 3730 (e)(4)(A); *see United States ex rel. Mistick PBT v. Hous. Auth.*, 186 F.3d 376, 382 (3d Cir. 1999) (explaining jurisdictional bar). This bar on suits based on public disclosure is jurisdictional. *Id.*

Here, Relator concedes in the Complaint itself that his claims are based upon public disclosures in a civil proceeding and information disclosed through Freedom of Information Act requests to HUD. Complaint, ¶ 4. Indeed, Relator alleges: "The majority of underlying facts

---

[1]    Relator's remaining claims (Counts 7 through 9) are not directed at Defendants but rather are asserted against anonymous "John Doe" Corporations. Complaint, ¶¶ 42-44, 133-141. Although not directed at the Defendants, these claims suffer the same infirmities that warrant the dismissal of the claims against Defendants.

[2]    The provision provides: "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A).

3

were [received] with receipt of information requested through interrogatories and multiple orders of court with cover letter of court ordered information . . . and information received from HUD through Freedom of Information Act package of information." *Id.* Such disclosures — that is, the disclosures forming the basis of Relator's claims — fall squarely within the jurisdictional bar.

Under controlling Third Circuit precedent, it is well settled that disclosures made in litigation — including those ordered by a court and discovery responses — constitute public disclosures under 31 U.S.C. § 3730(e)(4)(A). *United States ex rel. Stinson v. Prudential Ins. Co.*, 944 F.2d 1149, 1157-58 (3d Cir. 1991) (construing "a civil 'hearing' as used in subsection (e)(4)(A) to encompass the full range of proceedings in a civil lawsuit," including discovery responses regardless of whether they are filed with the court); *see also United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 744-46 (3d Cir. 1997) (discussing the *Stinson* holding). Thus, the information Relator gathered from "interrogatories and multiple orders of court with cover letter of court ordered information," Complaint, ¶ 4, is publicly disclosed information under the statute. As a matter of law, such information *cannot* give rise to an FCA claim.

Documents received in response to FOIA requests likewise constitute public disclosures under the *qui tam* provision. Indeed, in *United States ex rel. Mistick PBT v. Housing Authority of the City of Pittsburgh*, the Third Circuit expressly held that "the disclosure of information in response to a FOIA request is a 'public disclosure.'" 186 F.3d at 383. There, as here, the FOIA request had been made by the *qui tam* relator. *Id.* Accordingly, the information provided by HUD in response to Relator's FOIA requests — *i.e.,* the information alleged as the basis of

Relator's FCA claims, *see* Complaint, ¶ 4 — was "publicly disclosed" and, therefore, cannot give rise to any viable FCA claim against Defendants.[3]

Nor does Relator fall under the "original source" exception to the jurisdictional bar. Under § 3730(e)(4)(B), an "original source" is one with "direct and independent knowledge of the information on which the allegations are based" that "has voluntarily provided the information to the Government before filing an action under [the FCA]." 31 U.S.C. § 3730(e)(4)(B). Again, the Complaint itself confirms that Relator was *not* an original source. Relator specifically pled that the "majority of underlying facts were not received *until*" he received the litigation and FOIA documents, Complaint, ¶4, and that it is the "*received information* [that] indicates a continuing wrong consisting of monthly improper claims made to HUD from June of 1992 through February of 2000, and the improper handling of the received HUD program funds through present." Complaint, ¶4 (emphasis added). Based on his own admissions, Relator does *not* qualify as an "original source." *See* 31 U.S.C. § 3730(e)(4)(B).

Because Relator has admitted in the Complaint itself that his claims are based upon public disclosures, this Court is without subject matter jurisdiction to hear the FCA claims. As a matter of law, Relator's FCA claims (Counts 1-4, and 6) must be dismissed.

## II.    RELATOR'S FCA CLAIMS RELATING TO HIS SPECIFIC LOAN (COUNTS 1 AND 2) MUST BE DISMISSED FOR THE ADDITIONAL REASONS THAT RELATOR HAS FAILED TO PLEAD SCIENTER, FAILED TO PLEAD WITH PARTICULARITY, AND FAILED TO STATE A VIABLE, TIMELY CLAIM.

Relator alleges that First Investment made six claims each month from June 1992 through February 1997 when it submitted monthly forms seeking the subsidy payment and handling

---

[3]    *See also United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1520 (9th Cir. 1995) (FOIA request held to be a public disclosure), *vacated on other grounds*, 520 U.S. 939 (1997); *United States ex rel. Lamers v. City of Green Bay*, 998 F. Supp. 971, 979 (E.D. Wis. 1998) (same), *aff'd*, 168 F.3d 1013 (7th Cir. 1999); *United States ex rel. Burns v. A.D. Roe Co., Inc.*, 919 F. Supp. 255, 257 (W.D. Ky. 1996) (same).

charge for Relator's loan as part of the Section 235 subsidy program.[4]  According to Relator, the

claims were "false" because his loan was in foreclosure and thus no longer qualified for the

subsidy under Section 235.  Complaint, ¶ 60; *see also* Complaint, at Counts 1-20.  Relator

likewise alleges that EverHome made six false claims each month from March 1997 through

February 2000 when it sub-serviced Relator's loan and continued to submit monthly forms

seeking the subsidy and handling charge for Relator's foreclosed loan.  Complaint, at Count 2.[5]

Relator's claims with respect to his personal loan (Counts 1 and 2) have no merit and should be

dismissed pursuant to Rules 9(b) and 12(b)(6).

### A.    Relator's FCA Claims Fail Because They Do Not Allege Scienter.

Relator completely fails to plead the scienter required for any FCA violation.[6]  To state

an FCA claim, the Relator must allege that the defendant "knew the claim was false or

fraudulent."[7] *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001).

Notably, "[i]nnocent mistakes or negligence are not actionable under this section." *United States*

*ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 2005 U.S. Dist. LEXIS 36427, at *13 (D.N.J. Dec.

---

[4]    The Relator reaches this number by alleging that First Investment, and later EverHome, submitted an original and a signed copy of a Form 93102 each month for Relator's loan as well as a Form 300.  Complaint ¶ 6-7. Relator multiplies these three alleged "claims" by two, as he alleges that each form invoiced both the Section 235 subsidy and the handling charge.  Complaint ¶ 9.  Relator thus claims that the submission of each of these forms constituted two "claims" — one for the subsidy and one for the handling fee — for a total of six "claims" each month.  Complaint, at Counts 1 and 2.

[5]    Relator alleges that First Investment is also liable for the forms submitted by EverHome when EverHome serviced Relator's loan from March 1997 through February 2000.

[6]    To establish a cause of action under the False Claims Act, 31 U.S.C. § 3729(a)(1), Relator must allege: (1) that the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) that the claim was false or fraudulent; and (3) that the defendant knew the claim was false or fraudulent.  *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001).

[7]    The FCA expressly defines "knowingly" to mean that a person "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

21, 2005). Relator, however, makes *no* allegations supporting the "knowing" violation element.[8]
*See* Complaint, *passim.* Indeed, there is *no* allegation that the alleged failure to terminate his
loan from the HUD Section 235 program was a "knowing" attempt to defraud the government as
opposed to mere negligence or an innocent mistake. Absent such an allegation, Relator's claims
fail as a matter of law.

### B.    Relator Fails To Allege An FCA Claim Based On His Loan With The Requisite Particularity.

FCA claims must be pled with particularity under Rule 9(b). *United States ex rel.
LaCorte v. SmithKline Beecham Clinical Labs, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998).
Particularity includes "specifying the time, place and substance of the defendant's alleged
conduct." *Id.* The "complaint must plead such facts as the time, place, and content of the
defendant's false representations, as well as the details of the defendant's fraudulent acts,
including when the acts occurred, who engaged in them, and what was obtained as a result."
*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). "Put
another way, the complaint must identify the 'who, what, where, when, and how' of the alleged
fraud." *Id.*[9]

Here, Relator has asserted his allegations regarding the subsidies for his loan on
*information and belief. See, e.g.,* Complaint, ¶¶ 17-25, 59-65, 66-79, 83-88, 90-97. Where a
Complaint is subject to Rule 9(b), however, simply pleading on "information and belief" is not
sufficient. To satisfy Rule 9(b), this Circuit requires "[that] a complaint ... delineate at least the
nature and scope of [Relators'] effort to obtain, before filing the complaint, the information

---

[8]    Relator alleges that the Defendants knew that Relator's loan was in foreclosure, *see* Complaint ¶¶ 16, 59, 83,
but this is insufficient, as the Complaint does *not* allege the requisite intent to defraud the government.

[9]    Three primary policies support Rule 9(b)'s requirement that fraud be pled with particularity: "(1) protecting a
defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing
notice of the claim to the adverse party." *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1327 (7th Cir. 1994).

needed to plead with particularity." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir.

1992); *see also United States ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 121-22

(W.D. Pa. 2006) (noting, in an FCA case, that Rule 9(b) requires "that allegations based upon

information and belief must be accompanied by a statement of what efforts were taken to obtain

such information from the opposing party, which has exclusive control over the relevant

information as well as a statement of what facts provide a basis for the allegation at hand").

Relator's claims in this case are merely pled on "information and belief" *without* any

accompanying statement of the efforts taken to obtain the particulars.  Because Relator's

allegations upon "information and belief" do not comply with the pleading requirements of Rule

9(b), Counts 1 and 2 are deficient as a matter of law and should be dismissed in their entirety.

**C.  Relator Has Not Stated A Viable Claim In Counts 1 And 2 Against First Investment For Submissions Relating To His Loan After February 1997.**

Relator does not, and cannot, allege an essential element of an FCA claim against First

Investment for claims submitted after February 1997, namely, that First Investment "presented"

or "caused to be presented" claims for payment to the government.  *See* 31 U.S.C. § 3729(a)(1).

Section 3729(a)(1) imposes liability on one who knowingly "presents" or "causes to be

presented" a false or fraudulent claim for payment or approval to the United States.  31 U.S.C. §

3729(a)(1); *see Hutchins*, 253 F.3d at 182 (listing elements).  The presentment of the claim to the

government is essential: "the statute attaches liability, not to the underlying fraudulent activity,

but to the 'claim for payment.'" *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995).

Relator, however, does not (and cannot) allege that First Investment presented claims to

the government after February 1997.  To the contrary, Relator affirmatively alleges that

EverHome presented the relevant forms after that date.  Complaint, ¶ 21-25.  Because the

Complaint does not even attempt to allege that First Investment presented any claims or caused

any claims to be presented after February 1997, all of Relator's FCA claims against First

Investment must be dismissed to the extent they relate to submissions post-February 1997.

*Hutchins*, 253 F.3d at 182; *Rivera*, 55 F.3d at 709.

### D.    Relator's Claims Regarding Submissions Prior To October 27, 1998, Are Time-Barred.

Relator claims that the Defendants made false claims to HUD every month from March

1992 through February 2000. Complaint, ¶¶ 17-24. But all FCA claims based upon forms

presented to HUD prior to October 27, 1998 — six years prior to the filing of the Complaint in

this action — are barred by the 6-year statute of limitations.[10] *See* 31 U.S.C. § 3731(b)(1);

*United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 255 F. Supp. 2d 351, 414 (E.D.

Pa. 2002) (applying the rule that "claims of a private relator sounding in the violation of any

subsection of § 3729 are governed by the six year statute of limitations codified at 31 U.S.C. §

3731(b)(1)"); *see also* John T. Boese, Civil False Claims and *Qui Tam* Actions § 5.02[B][3] (3d

ed. 2006) ("In cases brought only by a relator, the six-year limitations period applies.").[11]

Here, the Complaint facially shows noncompliance with the limitation period for each

and every alleged false claim submitted between February 1992 and October 27, 1998.

Accordingly, all claims based on submissions prior to October 27, 1998, are time-barred.

---

[10]    The Third Circuit allows statute of limitations defenses to be presented in Rule 12(b)(6) motions "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).

[11]    The FCA includes a three year discovery rule in action brought by or intervened in by the government. 31 U.S.C. 3731(b)(2). The rule, however, does *not* apply in cases brought by a *qui tam* relator. "By the clear statutory language, the Relator's time is not extended to three years after the United States official learns of the violation. That provision only applies to the government." *United States ex rel. Thistlethwaite v. Dowty Woodville Polymer*, 6 F. Supp. 2d 263, 265 (S.D.N.Y. 1998); *see also United States ex rel. El Amin v. George Washington Univ.*, 26 F. Supp. 2d 162, 172 (D.D.C. 1998) ("The plain language of the statute implies that 31 U.S.C. § 3731(b)(2) only applies to an action in which the government decides to intervene."). *But see United States ex rel. Hyatt v. Northrup Corp.*, 91 F.3d 1211 (9th Cir. 1996) (holding that a private relator could be a "United States official" for purposes of §3731(b)).

Because all claims before October 27, 1998 are time-barred, and because Relator cannot allege that First Investment "presented" or "caused to be presented" a claim to the government after that date, as discussed above, Count 1 (which is asserted only against First Investment) must be dismissed in its entirety. And Count 2 should likewise be dismissed on statute of limitations grounds to the extent it rests on claims submitted prior to October 27, 1998.

### III.    RELATOR'S FCA CLAIMS ARISING OUT OF THE SUB-SERVICING RELATIONSHIP BETWEEN FIRST INVESTMENT AND EVERHOME (COUNTS 3 AND 4) SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT THEY FAIL TO IDENTIFY A SINGLE RECORD OR CLAIM THAT IS FALSE, MUCH LESS PLEAD SUCH CLAIM WITH PARTICULARITY.

Unable to state a claim against Defendants based on his own loan, Relator challenges the sub-servicing agreement that Defendants entered, alleging that EverHome was not permitted under HUD regulations to service the loans subject to the sub-servicing agreement.[12] *See* Complaint, ¶¶ 52, 132. Relator attempts to dress-up this purported regulatory violation, which he otherwise would have no standing to pursue, as a False Claims Act violation. This attempt fails: None of his allegations and claims state a viable cause of action under the FCA.

Relator alleges, in Counts 3 and 4,[13] that Defendants submitted "false records" in violation of the FCA. Using a false record to get a false claim paid is a violation of § 3729(a)(2) of the FCA. A Section 3729(a)(2) claim is actually *more* demanding than the typical Section 3729(a)(1) violation, which prohibits submitting a false claim for payment to the United States. Submitting a false record or statement in order to get a false or fraudulent claim paid — *i.e.,* a

---

[12]    Specifically, Relator alleges that: (1) First Investment entered into a sub-servicing arrangement with EverHome for the sub-servicing of a package of HUD-insured mortgages; (2) the sub-servicing arrangement, as executed, was impermissible under the applicable HUD regulations; and (3) EverHome should not have been submitting documents to the government relating to any of the sub-serviced loans.

[13]    Count 3 and Count 4 contain substantially the same allegations; Count 3 is directed at First Investment and Count 4 is directed at EverHome.

Section 3729(a)(2) violation — incorporates the elements of a Section 3729(a)(1) claim, namely: (1) presentment of a claim for payment to the United States; (2) such claim being false or fraudulent; and (3) the intent to defraud the government. But Section 3729(a)(2) includes the additional elements of: (4) the submission of a false "record," that is (5) made or used to get a false claim *actually* paid or approved. *See United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004) ("In order to prove a claim under § 3729(a)(2), a [Relator] must also show that the defendant made or used (or caused someone else to make or use) a false record in order to cause the false claim to be actually paid or approved.").[14]

A false records claim, therefore, requires a double falsity: a relator must establish both that the record was false or fraudulent and the claim the record was used to get paid was also false or fraudulent. Here, Relator's FCA claims in Counts 3 and 4 are deficient as a matter of law, as the Complaint does not, and cannot, identify either: (1) a false record; or (2) a false claim that was actually paid by the government as a result of such "false record."

### A.    The Complaint Fails To Allege With Requisite Particularity That Defendants Submitted A "False Record."

The Relator has failed to identify a "false record." The Relator gropes for possibilities and presents three broad categories of documents as candidates:

   a.    Documents reporting to HUD a "merger" between First Investment and EverHome, *see* Complaint, ¶ 102-103, 115-116;

   b.    Forms 93102 and 300 filed by EverHome when it was sub-servicing Section 235 loans, *see* Complaint, ¶ 105-110, 118-123; and

   c.    Every document submitted to HUD by EverHome while sub-servicing any loan (whether or not in the Section 235 program) under the sub-servicing agreement, *see* Complaint, ¶ 104, 117.

---

[14]    *See also* John T. Boese, Civil False Claims and *Qui Tam* Actions § 2.01[B] (3d ed. 2006) (explaining that Section 3729(a)(2) is more stringent than § 3729(a)(1) in that it requires that the government actually has paid or approved the false claim).

Such allegations fail to meet the pleadings standards of Rule 12(b), much less Rule 9(b).

First, regarding category (a), Relator has not identified a single record, false or otherwise, reporting a merger to HUD. Relator alleges that HUD recorded a merger between Defendants, even though they merely entered a sub-servicing agreement. Complaint, ¶ 100. He therefore speculates that Defendants submitted records falsely reporting such a merger to HUD. Complaint, ¶¶ 102-103. (Relator apparently ignores or overlooks the possibility that HUD itself incorrectly recorded the sub-servicing agreement as a "merger.") Such speculation is *not* sufficient to satisfy Rule 9(b), which requires Relator to identify an actual false record. *See LaCorte*, 149 F.3d at 234 (explaining that the "complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result"). The Complaint's oblique reference to certain "merger" documents is patently insufficient to state a claim for a "false record."

Second, Relator's claim that every Form 93102 or Form 300 filed by EverHome is a "false record" likewise fails. Remarkably, Relator does not identify a single Form 93102 or Form 300 that EverHome actually filed.[15] Moreover, Relator has not alleged that any unidentified Form 93102 or Form 300 was actually "false." Indeed, there is *nothing* about such forms that Relator can allege is *actually* false; merely because EverHome submitted the forms does not, and cannot, render the forms themselves "false." Even if, as Relator alleges, EverHome was not properly authorized to service the loans on First Investment's behalf, nothing

---

[15] The Relator also has not identified any loan enrolled in the Section 235 program, other than his own; nor has he identified a single form that was actually submitted to HUD in connection with a loan other than his own. This pleading defect by itself strips Relator's claims of any vitality.

about this alleged regulatory violation renders the content of the forms themselves false in any way.

Finally, Relator suggests that every single document submitted to HUD by EverHome while sub-servicing any loan for First Investment (whether or not in the Section 235 program) was a "false record." *See* Complaint, ¶ 104, 117. Again, the Relator, has neither identified the actual documents at issue nor alleged how such documents were false. Rule 9(b) demands more.

Relator cannot use this action to discover whether some previously undiscovered false record exists. Such a fishing expedition is prohibited. *See, e.g., United States ex rel. Sacks v. Philadelphia Health Mgmt. Corp.*, 519 F. Supp. 818, 825 (E.D. Pa. 1981) (rejecting speculation that the defendant submitted false claims because the defendant made a surplus under a government program as grounds for a "discovery fishing expedition[]"). Rule 9(b) requires the identification of the allegedly false documents with particularity to prevent the type of speculation underlying Relator's claims in this case.[16] Having failed to identify any false record, Relator's claims necessarily fail.

### B.    Relator Does Not Identify Any "False Claim" Actually Paid As A Result Of A Purported False Record.

Relator's FCA claims in Counts 3 and 4 fail for the additional reason that the Complaint does not, and cannot, allege that a single false claim was actually paid by the government as a result of any of these purported "false records." This point cannot be overstated: Relator does not identify a single false claim that these false records were intended to cause, much less actually caused, the government to pay. Indeed, the Relator does not allege that *any* false claim was actually paid as a result of the allegedly false records that were submitted to HUD. Absent

---

[16]    *See also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (listing as one of the three primary policies of Rule 9(b) "minimizing 'strike suits' and 'fishing expeditions'").

allegations of actual payment of a false claim, Relator's FCA claims in Counts 3 and 4 must be

dismissed. *Schmidt*, 386 F.3d at 242.

### C.    Mere Noncompliance With A HUD Regulation Does Not Itself Constitute An FCA Violation.

Notably, courts "have cautioned against equating every regulatory violation or breach of

contract with a potential FCA action." *United States ex rel. Drescher v. Highmark, Inc.*, 305 F.

Supp. 2d 451, 460 n.9 (E.D. Pa. 2004) (citing, by way of example, *United States ex rel. Hopper*

*v. Anton*, 91 F.3d 1261, 1265 (9th Cir. 1996) (stating "it is not the case that any breach of

contract, or violation of regulations or law, or receipt of money from the government where one

is not entitled to receive the money, automatically gives rise to a claim under the FCA")).

Rather, "the FCA is far narrower [and] requires a false claim." *Id.* (quoting *Hopper*, 91 F.3d at

1265).[17] Here, there was no false claim. At best, Relator can merely allege certain regulatory

noncompliance in the form of a sub-servicing agreement that did *not* cause the government to

pay any false claims. As noted in *Drescher*, mere regulatory noncompliance *cannot* rise to an

FCA claim absent a false claim. The falsity of the claim and the falsity of the record are

essential elements that Relator has not pled — with particularity or otherwise.

Under well-settled, unambiguous case law, Relator's theory concerning the sub-servicing

agreement cannot stand. At bottom, each of Relator's claims in Counts 3 and 4 collapses into the

assertion that EverHome was impermissibly sub-servicing loans. This, in and of itself, does not

---

[17]    *See also Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999) (holding that because the FCA attaches liability to the claim for payment and not to the underlying fraud, "a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government"); *U.S. v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995) ("The statute attaches liability, not to the underlying fraudulent activity . . . but to the 'claim for payment.'").

state a claim for an FCA violation, much less plead one with the particularity required by Rule

9(b). *Hopper*, 91 F.3d at 1265; *Drescher*, 305 F. Supp. 2d at 460 n.9.[18]

## IV.    RELATOR'S FCA CONSPIRACY CLAIM (COUNT 6) ALSO MUST BE DISMISSED BECAUSE IT NEITHER ALLEGES A CONSPIRACY UNDER THE FCA NOR IS SUFFICIENTLY PLED.

Count 6 attempts to assert a conspiracy claim under the FCA, pursuant to § 3729(a)(3).

Relator's FCA conspiracy claim fails because it does not allege a conspiracy *to defraud the*

*government* — the only type of conspiracy claim that Relator can pursue under the FCA.

Relator's FCA conspiracy claim also fails because the Complaint does not, and cannot, allege

any of the components of the conspiracy.

"To state a conspiracy claim under the FCA, a [Relator] must plead a conspiracy with one

or more persons to defraud the Government through obtaining payment or allowance of a false or

fraudulent claim and that at least one of the co-conspirators committed an overt act in

furtherance of the conspiracy." *United States ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D.

113, 123 (W.D. Pa. 2006) (citing *Blusal Meats, Inc. v. United States,* 638 F. Supp. 824, 828

(S.D.N.Y. 1986)).  Moreover, "when pleading a conspiracy pursuant to 31 U.S.C. § 3729(a)(3),

a Relator must describe the general composition of the conspiracy, some or all of its broad

objectives, and defendant's general role in that conspiracy." *Id.*

Notably, here, the Complaint's only allegation of conspiracy is: "Upon information and

belief, it appears that there has been a conspiracy between First Investment and EverHome to

violate Federal Law . . . . As EverHome usurped the servicing rights which had not been granted

by contract and/or law, and First Investment not only permitted EverHome to do so, First

---

[18]    Relators' claims in Counts 3 and 4 suffer the additional infirmity that they do not allege any "knowing" violations. As discussed *supra*, the scienter requirement is essential to FCA claims. Counts 3 and 4 must be dismissed for this deficiency as well.

15

Investment profited by EverHome's action and condoned said actions in multiple Courts of Law, thus it appears that a conspiracy does and has existed to violate both the letter and spirit of the Law and specifically in violation of 31 U.S.C. § 3729." Complaint, ¶ 132. This single allegation is insufficient to state a conspiracy claim under the FCA.

**First**, the Complaint does not allege a conspiracy "to defraud the Government." The Complaint thus fails to assert a violation of 31 U.S.C. § 3729(a)(3). The FCA prohibits only conspiracy "to defraud the Government through obtaining payment or allowance of a false or fraudulent claim." But the Complaint alleges something different: it alleges a conspiracy to "violate Federal Law" through "EverHome['s] usurping the servicing rights which had not been granted by contract and/or law." Complaint, ¶ 132. Although a *qui tam* relator may bring claims for conspiracies to defraud the government through false claims, a *qui tam* relator does *not* have a roving warrant to bring conspiracy claims based on other violations of federal law. *Bartlett*, 234 F.R.D. at 123 (explaining that a conspiracy under 31 U.S.C. § 3729(a)(3) must be one "to defraud the Government through obtaining payment or allowance of a false or fraudulent claim"). For this reason alone, the claim should be dismissed.

**Second**, the conspiracy allegation is insufficiently pled. The allegation (i) lacks particularity, (ii) is alleged on "information and belief," and (iii) claims only that "it appears" that a conspiracy existed. Indeed, the Complaint neither alleges an agreement between First Investment and EverHome nor sets forth the objective of the conspiracy — *two* glaring omissions. The allegation boils down to a mere assertion that First Investment and EverHome went about their business as if the sub-servicing agreement was proper. This is not sufficient to allege a conspiracy under the FCA.

For these reasons, and for the reasons discussed in connection with Relator's other FCA claims — *e.g.*, impermissible reliance on public disclosures and failure to identify a false claim — Count 6 must be dismissed.[19]

## V.   RELATOR'S CLAIM FOR BREACH OF CONTRACT (COUNT 5) SHOULD BE DISMISSED.

While Count 5 is not entirely clear, it appears to be an attempt to assert a breach of contract claim based on the alleged impropriety of the Defendants' sub-servicing arrangement. The Complaint alleges that "the contract for the HUD mortgage insurance between First Investment and HUD has been violated with the full knowledge of First Investment and may no longer be enforceable." Complaint, ¶ 128. To the extent this is an attempt to assert a contract claim, the attempt fails. The Relator simply has no standing to bring a breach of contract claim against either Defendant. Courts have uniformly dismissed attempts by mortgagors to enforce contracts between loan servicers and loan investors or insurers. *See Rank v. Nimmo*, 677 F.2d 692, 698 (9th Cir. 1982); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 362 (5th Cir. 1977); *Deerman v. Fed. Home Loan Mortgage Corp.*, 955 F. Supp. 1393, (N.D. Ala. 1997); *Hinton v. Fed. Nat'l Mortgage Ass'n*, 945 F. Supp. 1052, 1061 (S.D. Tex. 1996); *Fed. Nat'l Mortgage Ass'n v. Prior*, 381 N.W.2d 558, 560 (Wis. Ct. App. 1985). In short, the Complaint provides no basis or explanation as to why the Relator should have standing to bring a breach of contract claim as to a contract to which the Relator is not a party. Nor does the Complaint allege any damages to the Relator resulting from such alleged breach. Because Count 5 neither states a claim for a breach of contract nor asserts any other cognizable claim, it must be dismissed.

---

[19]   Count 6 appears to be limited to the "usurpation" of servicing rights by EverHome. It contains no allegations that First Investment and EverHome conspired to submit false claims for Section 235 subsidies for Realtor's loan, despite his alleged ineligibility. Nor would the Complaint support such a conspiracy allegation. Relator has not alleged any combination or agreement regarding the submission of specific subsidies.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

DATED:  October 26, 2006

> FIRST INVESTMENT COMPANY, AND
> EVERHOME MORTGAGE COMPANY,
>
>
> By: s/Jennifer E. Watson
>     Jennifer E. Watson, Esq.
>     WILBRAHAM LAWLER & BUBA
>     Two Gateway Center, 17N
>     Pittsburgh, PA  15222
>     TEL:  (412) 255-0662
>     FAX:  (412) 255-0505
>
>     Attorney for Defendants
>     First Investment Company, and
>     EverHome Mortgage Company

OF COUNSEL:

Roberto M. Braceras, Esq.          Sarah S. Keast, Esq.
Goodwin Procter LLP                Goodwin Procter LLP
Exchange Place                     901 New York Avenue, N.W.
Boston, MA  02109                  Washington, D.C. 20001
Tel: 617/570-1000                  Tel: 202/346-4000

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2006, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Malcolm L. Pollard, Esq.
485 Westlake Road #119
Erie, Pennsylvania 16505
Tel: 814/838-8258
Fax: 814/838-8452

Attorney for Relator


Mary Beth Buchanan, United States Attorney, Western District of Pennsylvania
Robert L. Eberhardt, Assistant United States Attorney
U.S. Post Office and Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7353
(412) 644-6995 (fax)

David Leviss, Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044
(202) 353-2680
(202) 307-3852 (fax)

Attorneys for the United States of America



s/ Jennifer E. Watson


LIBA/1740022.4

19