IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, ex rel.,  :
and  :
William L. Fry  :
1113 Garloch Drive  :
Erie, PA 16505  :
      Plaintiffs  :   CIVIL ACTION
  v.  :   NO: 04-0316E
  :
FIRST INVESTMENT COMPANY  :
OF COLUMBUS, OHIO,  :
an Ohio Corporation,  :
 and  :
EVERHOME MORTGAGE COMPANY,  :
formerly ALLIANCE MORTGAGE COMPANY,  :
OF JACKSONVILLE, FLORIDA,  :
a Florida Corporation,  :
 and  :
UNKNOWN MORTGAGE COMPANY A  :
 and  :
UNKNOWN MORTGAGE COMPANY B  :
 and  :
UNKNOWN MORTGAGE COMPANY C  :
     Defendants  :

## FIRST AMENDED COMPLAINT FOR MONETARY DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIM ACT

### INTRODUCTION

1.  This **FIRST AMENDED COMPLAINT FOR MONETARY DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIM ACT** is being filed under F.R.C.P. 15(a).  This is an action to recover monetary damages and civil penalties on behalf of the United States of America for false claims made by the defendants, First Investment Company ("First Investment") and EverHome Mortgage Company, formerly Alliance Mortgage Company,

("EverHome") and multiple "UNKNOWN MORTGAGE COMPANIES" to HUD as an agency of the United States Government in violation of the False Claim Act (the "Act"), 31 U.S.C. § 3729 et seq.

2.     The original COMPLAINT FOR MONETARY DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIM ACT was filed Under Seal on October 27, 2004, and served upon Michael F. Hurtz, Director, Commercial Litigation Branch - Civil Division, U. S. Department of Justice, Office of the Attorney General, Washington, DC, and Marshall J. Piccinini, Esquire, United States Attorney, Erie, PA.  As required under 31 U.S.C. § 3730(b)(2), Plaintiff provided to the Attorney General and the U. S. Attorney a written summary of substantially all material evidence and information in his possession with respect to the allegations contained therein.

3.     The Act provides that any person who knowingly submits a false or fraudulent claim for payment or approval to the United States Government is liable to the Government for a civil penalty of not less than $5,000.00 and not more than $10,000.00 for each such claim, plus three times the amount of the damages sustained by the Government because of the false claim.

4.     The Act allows any person having knowledge of false or fraudulent claims against the Government to bring an action in federal district court for himself and for the United States Government and to share in any recovery.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under 28 U.S.C. Sections 1331 and 3732.

6.      Venue in this Court is proper pursuant to 31 U.S.C. section 3732(a).


## PARTIES

7.      Plaintiff, William L. Fry is an individual residing at 1113 Garloch Drive, Erie, PA

16505.  Plaintiff brings this action for himself and on behalf of the United States Government.

8.      Defendant, First Investment Company, is an Ohio corporation with offices located

at 1885 Northwest Boulevard, Columbus, OH 43212.

9.      Defendant, EverHome Mortgage Company, formerly named Alliance Mortgage

Company, is a Florida corporation with offices located at 8100 Nations Way, Jacksonville, FL

32256.

10.      Defendant, "UNKNOWN MORTGAGE COMPANY A", is believed to be a

mortgage company previously servicing HUD insured mortgages wherein it was mortgagee

and/or servicer to said mortgages, and then contracted with EverHome Mortgage Company

(formerly Alliance Mortgage Company) through a "Sub-servicing Agreement" or a similarly

worded document wherein EverHome was to "Sub-service" an unknown number of HUD insured

mortgages, possibly including Section 235 mortgages, and neither by action as defined by HUD

regulations, the Code of Federal Regulations and the United States Code or by the wording of the

"sub-servicing" contract did "UNKNOWN MORTGAGE COMPANY A" merge with or transfer

the servicing rights to EverHome and the duties of EverHome as defined within the  "Sub-

servicing" contract specifically limited the sub-servicing duties of EverHome.

11.      Defendant, "UNKNOWN MORTGAGE COMPANY B", is believed to be a

mortgage company previously servicing HUD insured mortgages wherein it was mortgagee

and/or servicer to said mortgages, and then contracted with EverHome Mortgage Company (formerly Alliance Mortgage Company) through a "Sub-servicing Agreement" or a similarly worded document wherein EverHome was to "Sub-service" an unknown number of HUD insured mortgages, possibly including Section 235 mortgages, and <u>neither</u> by action as defined by HUD regulations, the Code of Federal Regulations and the United States Code or by the wording of the "sub-servicing" contract did "UNKNOWN MORTGAGE COMPANY B" merge with or transfer the servicing rights to EverHome and the duties of EverHome as defined within the "Sub-servicing" contract specifically limited the sub-servicing duties of EverHome.

12.     Defendant, "UNKNOWN MORTGAGE COMPANY C", is believed to be a mortgage company previously servicing HUD insured mortgages wherein it was mortgagee and/or servicer to said mortgages, and then contracted with EverHome Mortgage Company (formerly Alliance Mortgage Company) through a "Sub-servicing Agreement" or a similarly worded document wherein EverHome was to "Sub-service" an unknown number of HUD insured mortgages, possibly including Section 235 mortgages, and <u>neither</u> by action as defined by HUD regulations, the Code of Federal Regulations and the United States Code or by the wording of the "sub-servicing" contract did "UNKNOWN MORTGAGE COMPANY C" merge with or transfer the servicing rights to EverHome and the duties of EverHome as defined within the "Sub-servicing" contract specifically limited the sub-servicing duties of EverHome.

## BACKGROUND INFORMATION

13.     The underlying information which comprises the causes of action set forth in this Complaint were uncovered and researched by William L. Fry, the ex rel. Plaintiff in this matter.

He is the "original source" under the definition of 31 U.S.C. § 3730(e)(4)(A):

> "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or Government Accounting Office repom hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General <u>or the person bringing the action is an original source of the information</u>." (underline added)

14.    The information presented below and in the specific Counts contained within this action makes clear that the actions of several Defendants in continuing to treat the ex rel. Plaintiff's HUD Section 235 mortgage as "active" when in foreclosure since 1992 and thus continued to submit documents seeking payment of a HUD monthly monetary "Subsidy" and HUD "Handling Fee" were false and/or fraudulent.  The Defendants presented or caused to be presented to an agency of the United States (Department of Housing and Urban Development) a claim for payment of a "Subsidy" and a "Handling Fee".  The Defendants' claims for payment were false and/or fraudulent and the Defendants knew the claims for payment were false and/or fraudulent.  The Defendants had actual knowledge of the information making the claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information. For over eight years the Defendants accepted the "Subsidy" funds and "Handling Fees" from HUD acquired under the false and/or fraudulent circumstances.

15.    The information presented below and in the specific Counts contained within this action makes clear that the actions of several Defendants by entering into contracts and/or agreements for the sub-servicing of HUD insured mortgages, including HUD 235 mortgages with "Subsidy" and "Handling Fees" billable to HUD and requiring continuing eligibility for HUD mortgage insurance, whereby said contracts and/or agreements there were no mergers and no

servicing rights were transferred.  The Defendants presented or caused to be presented to an

agency of the United States (Department of Housing and Urban Development) specific

documents, via paper filing or electronic filing, to support a claim for payment indicating a

"MERGER" and transfer of servicing rights and submitted supporting documents and invoices for

payment of "Subsidy" and "Handling Fees" and continuing eligibility for HUD mortgage

insurance.  The Defendants' supporting documents and claims for payment, whether paper or

electronic, were false and/or fraudulent and the Defendants knew the claims for payment were

false and/or fraudulent.  The Defendants had actual knowledge of the information making the

claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity

of the information so submitted; or acted in reckless disregard of the truth or falsity of the

information.  For almost ten years the Defendants accepted the "Subsidy" funds and "Handling

Fees" and continuing eligibility for HUD mortgage insurance from HUD acquired under the false

and/or fraudulent circumstances.

       16.    The inclusion of the multiple "UNKNOWN MORTGAGE COMPANIES" (A, B

and C) results from the review of the public relations portrayal of EverHome under its parent

EverBank's internet site wherein it describes EverHome as:

**"Mortgage Operations and Servicing**

**EverHome Mortgage Company**
EverHome Mortgage Company provides mortgage and home equity <u>loan servicing and
subservicing on over 300,000 loans</u> with principal balances of $36 billion for <u>over 800
private investors</u> and government agencies. EverHome Mortgage Company manages
servicing partnerships for Wachovia, The Bank of New York, Bear Stearns, and others.
EverBank is an S&P select servicer and has been named to Freddie Mac's Tier One
Servicer list for four consecutive years. As a result, EverBank has developed core
expertise in servicing complex products and portfolio characteristics <u>and providing
outsourcing services for other firms</u>."  (underline added)

- 6 -

With "servicing and subservicing on over 300,000 loans" and "over 800 private investors" and "providing outsourcing services for other firms" it appears more than probable that there are many other sub-servicing or similar agreements between EverHome and other mortgagees and/or servicers which are based upon the same or similar outline as the agreement between First Investment and EverHome with the probability of same or similar false and/or fraudulent filings and/or billings to HUD in violation of the False Claim Act, 31 U.S.C. § 3729.

      17.    The causes of action under the False Claims Act were suspected in June of 2003 but were then unproven.  The Plaintiff requested **NON-PUBLIC** information from HUD in the context of the status shown in HUD files for his mortgage as the Plaintiff had been fighting foreclosure since 1992 and had been in the Bankruptcy Court since 1997 attempting to save his home.  (Said home was successfully refinanced in August of 2006 through an Order of the Bankruptcy Court).  The **NON-PUBLIC** request was made through the offices of Congressman Phil English.  On August 7, 2003, the Plaintiff received directly from the offices of the Congressman a copy of a fax from Deloitte & Touche, LLP, contractor for HUD, (attached as Exhibit 1) which included copies of 4 HUD database screen prints showing the Plaintiff's mortgage with "CASE STATUS" as "**ACTIVE**", the mortgage "HOLDER" as "**38082**" (First Investment), the mortgage "SERVICER" as "**08411**" (Alliance Mortgage, now known as Everhome), the "LAST BILL" date as "**07/03**", the "TRANSF/TERM" (transfer) date as "**03/97**", with "OLD MTGEE" as "**38082**" (First Investment), "NEW MTGEE" as "**08411**" (Alliance Mortgage, now known as Everhome), "DATE" as "**97/03/01**" and "TYPE" as "**MERGER**". Said information was contrary with known facts that: the Plaintiff's mortgage had been in default and in foreclosure since 1992, First Investment had obtained judgment in 1996, Alliance

Mortgage (now known as Everhome) had filed a Proof of Claim in the Bankruptcy Court stating in that Court that First Investment was no longer in business and that Alliance Mortgage was the successor in interest and servicer of the Plaintiff's mortgage.  Additional information was received from HUD per **NON-PUBLIC** letter from the office of Congressman English dated November 3, 2003, (attached as Exhibit 2) outlined below:

> "In further response to your inquiry, I have received the following information from HUD via telephone.
>
> The questions that you posed in regard to the responsibilities and obligations of a "sub-servicer" <u>can not be answered</u> as presented.  In other words, <u>your questions can not be answered by HUD because there is no such thing as a "sub-servicer" as HUD does not recognize either "sub-servicer" or "sub-servicing" as being valid terms in relation to HUD insured mortgages</u>.
>
> Some information is available concerning your mortgage file.  <u>Your FHA case number is no longer on file so there is no FHA mortgage insurance</u>, however, your mortgage information is still available through other means.  <u>The eligibility for the mortgage subsidy terminated at the time foreclosure was initiated in 1992.</u>  First Investment Company is listed as the holder of the mortgage.  Alliance Mortgage Company is listed as servicer. <u>HUD records show a merger between First Investment and Alliance Mortgage</u>."  (underline added)

The majority of the additional underlying facts were not received until July of 2004 with receipt of an incomplete copy of the Plaintiff's mortgage file and other information from Alliance Mortgage (now known as Everhome) delivered directly to the Plaintiff's Bankruptcy attorney with cover letter dated June 28, 2004.  **The copy of the Plaintiff's mortgage file was not filed with the Bankruptcy Court**.  Additional information dated July 7, 2004, consisting of a copy of the Plaintiff's existing HUD file was received from HUD through a **Privacy Act** and Freedom of Information Act request.  **Copies of the Plaintiff's personal mortgage files from a mortgage company, copies of his personal files requested from and received from HUD and information requested under the Privacy Act are not considered in the public forum**.  Said

received information indicates a continuing wrong consisting of monthly improper claims, monthly improper billings and improper supportive filings to HUD from June of 1992 through February of 2000, and monthly improper claims, monthly improper billings and improper supportive filings to HUD for 235 program funds ("Subsidy") and "Handling Charge" from March of 1997 through the refinancing of the mortgage in August of 2006.  Other <u>supporting</u> information was subsequently received from HUD under both the **<u>Privacy Act</u>** and the Freedom of Information Act **<u>where said information as pertains specifically to the Plaintiff's personal file is not considered in the public forum</u>**.

18.    The Plaintiff, contacted HUD with his inquiries and concerns of fraud and improper filings and was informed of multiple individuals in various departments and locations to whom he should forward his Freedom of Information Act and Privacy Act requests.  Each such request contained similar wording as follows:

> "This is a request under the Freedom of Information Act as defined under 5 U.S.C. § 552, and the Privacy Act as defined under 5 U.S.C. § 552a.

> This request is presented "In Camera" and "Under Seal" as the information gleaned is to be presented to a federal court in the context of exposing possible fraudulent submissions to several federal and state courts over a period of seven years and in preparation of a "Qui Tam" suit under the "False Claims Act" pursuant to 31 U.S.C. § 3730(b)(1),(b)(2), and to 28 U.S.C. § 2410(a),(a)(2), whereas there is evidence of the possibility of misappropriation or misapplication of thousands of dollars of federal program funds. Under the "False Claims Act" confidentiality is required by placing the matter under seal until the Government has had the opportunity to review the complaint."

19.    The Plaintiff, <u>as original source of information in this matter</u>, did make a specific public disclosure of possible fraud against HUD by First Investment and EverHome (f.k.a. Alliance Mortgage) in the United States Bankruptcy Court for the Western District of Pennsylvania in an Adversary Complaint at number 03-1020 on July 11, 2003, wherein the

- 9 -

Plaintiff stated in his complaint:

"**IN THE ALTERNATIVE**:

      A.    If it is determined that the mortgage was not reinstated with waiver of the foreclosure judgment, the application of funds received from the Trustee by Alliance Mortgage Company and First Investment Company to the principal, interest, taxes and insurance of the Plaintiff's mortgage must be considered under the theory of unjust enrichment <u>and violation of HUD regulations, Federal statutes and possible fraud as to the HUD funds applied against the mortgage interest and the billings to HUD for subsidy funds as to a mortgage which has been foreclosed and merged into judgment</u>." (underline added)

"**COUNT 11**:   FIRST INVESTMENT COMPANY: Request for judgment for <u>improper filing of documents with HUD, possible fraud, possible violation of HUD regulations and Federal statutes as to improper taking of HUD funds reserved for interest subsidy with unjust enrichment. Request the return of funds to HUD with costs, interest and damages.</u>" (underline added)

"   46.    If it is proven that reinstatement did not occur and state judgment was not waived, as mortgage merged into judgment <u>and First Investment Company did not return $20,703.83 of funds previously invoiced to HUD for subsidy use and continued to invoice HUD for subsidy funds of approximately $7448.00, it appears that unjust enrichment occurred when $11,339.27 subsidy funds were improperly applied against post-judgment interest for the Plaintiff's mortgage.</u>  The amounts above were correct as of the date of the spreadsheets but may have changed with the passage of time.  <u>HUD deems that for each day a violation is uncorrected a separate violation occurs with separate fines and interest.</u>" (underline added)

"**COUNT 14**:   ALLIANCE MORTGAGE COMPANY: Request for judgment for <u>improper filing of documents with HUD, possible fraud, possible violation of HUD regulations and Federal statutes as to improper use of HUD subsidy funds and unjust enrichment.  Request the return of funds to HUD with costs, interest and damages</u>." (underline added)

"   52.    If it is proven that reinstatement did not occur and state judgment was not waived, as mortgage merged into judgment <u>and Alliance Mortgage Company as sub-servicer for First Investment Company did not return $20,703.83 of funds previously invoiced to HUD for subsidy use and continued to invoice HUD for subsidy funds of approximately $7448.00, unjust enrichment occurred when $11,339.27 subsidy funds were improperly applied against post-judgment interest for the Plaintiff's mortgage.</u>  The amounts above were correct as of the date of the spreadsheets but may have changed with the passage of time.  <u>HUD deems that for each day a violation is uncorrected a separate violation occurs with separate fines and interest.</u>" (underline added)

Said Adversary Complaint was closed without judgment in November of 2006 following the Plaintiff's refinancing of his mortgage.

20.    As specified in more detail below, it appears that each and every month EverHome, since March of 1997 as sub-servicer of mortgages for First Investment, and First Investment, prior to March of 1997 as mortgagee and servicer, submitted to the United States Department of Housing and Urban Development ("HUD") an original and a copy of a form HUD-93102 ("Form 93102 ") titled: "Mortgagee's Certification and Application for Assistance or Interest Reduction Payments",  requesting "Subsidy Payments" from HUD pursuant to HUD's Section 235 Housing Program. Both the original and the copy of the Form 93102 must contain an original "Signature and Title of Mortgagee or Servicer Official".  Said Form 93102 contains the following warning to and required certification of the signing individual:

"Warning: Section 1001 of Title 18, U.S.C. Statements or entries generally.  Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick scheme, or device a material fact or makes any false, fictitious or fraudulent statements or misrepresentations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years or both."

"Certification: The undersigned hereby certifies that: (a) each assistance payment or interest reduction payment included in this billing has been calculated in accordance with the applicable provisions of the HUD regulations; (b) there are no amounts included in this billing on behalf of mortgagors where the required recertifications and documentation set forth in 24 CFR 235.350 have not been made within the time limitations and in the manner prescribed in such regulation; (c) the amount of this billing is true and correct and has not been previously claimed or paid; (d) credits, where applicable, for previous payments made by HUD have been given; (e) supporting details record. work sheets together with a copy of this billing are being held in the mortgagee's files: and (f) upon request of any authorized official of the Department of Housing and Urban Development or of the Comptroller General of the United States, it will furnish or make available for audit all aforementioned documents as required by the contract for assistance payments or interest reduction requirements under Section 235 or 236 of the HUD regulations.  Contract requirements are set forth in 24 CFR 235.201 et seq."  (underline added)

As both First Investment and EverHome had knowledge of the above warning and certification language of each of the approximately 92 monthly Form 93102 forms filed and the status of the Plaintiff's mortgage foreclosure since 1992, or as said information was properly available in their files for over eight years, it must be considered that First Investment and EverHome presented or caused to be presented to an agency of the United States (HUD) a claim for payment of a "Subsidy" and a "Handling Fee". The Defendants' claims for payment were false and/or fraudulent and the Defendants knew the claims for payment were false and/or fraudulent. The Defendants had actual knowledge of the information making the claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information. Thus, for over eight years the Defendants accepted the "Subsidy" funds and "Handling Fees" from HUD acquired under the false and/or fraudulent circumstances.

21.    The Form 93102 signed original and Form 93102 signed copy must be accompanied by a Form HUD-300 ("Form 300") titled: "Monthly Summary of Assistance Payments" which details as required all of the individual "Subsidy Payment" billing amounts included in the Form 93102, one line item for each eligible Section 235 mortgage. HUD has permitted a computer printed report in the same format to substitute for the Form 300. The Form 300 contains the following warning to submitting individuals:

> Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012, U.S.C. 3729, 3802)

22.    The payments made by HUD to EverHome and/or First Investment for HUD's Section 235 Housing Program enables <u>eligible</u> homeowners to obtain a monthly interest subsidy from HUD thus lowering the monthly mortgage payment made by the individual homeowner.

23.     In conjunction with the Subsidy Payment funds billed by EverHome and/or First Investment to HUD pursuant to each monthly filing with HUD of the Form 93102 signed original with Form 93102 signed copy and the Form 300, or computer report as substitute, EverHome, since March of 1997 as sub-servicer of mortgages for First Investment, and First Investment, prior to March of 1997 as mortgagee and servicer, have also invoiced HUD a "Handling Charge" for each and every Section 235 mortgage listed in the Form 300, or computer report as substitute, and summarized in the Form 93102 original and copy.

24.     Such Subsidy Payments and Handling Charges that were/are requested monthly on the aforementioned Form 93102 original with Form 93102 copy and the Form 300, or computer report as substitute, by EverHome and/or First Investment with the signing of the Form 93102 and its copy, and submission of said forms EverHome and First Investment are attesting to the continuing right to bill for such Subsidy and Handling Charges for each and every Section 235 mortgage listed and to knowledge of the false claims warnings printed on each of the forms and stated in The HUD Manual at section 10-21(E) **NOTE**.  (see **HUD'S SECTION 235 PROGRAM** detailed below)

25.     A mortgagor remains eligible for assistance in the form of subsidy under Section 235 until the mortgagee takes the first legal action required to initiate foreclosure or until some other event requires suspension or termination of the assistance payments contract.

26.     William L. Fry, the ex rel. Plaintiff, was a mortgagor with a mortgage among the over 6,000 HUD insured mortgages including an unknown number of 235 mortgages wherein First Investment was mortgagee at the time when EverHome (f.k.a. Alliance Mortgage) became sub-servicer on or about March 1, 1997.

- 13 -

27.    Plaintiff Fry's mortgage was in foreclosure from September of 1992 with a default date of June 1, 1992, and therefore, per the HUD regulations, was ineligible for the Section 235 subsidy since the date of the initiation of the foreclosure action.  (See HUD information contained in abovementioned letter from office of Congressman English dated November 3, 2003, attached as Exhibit 2)

28.    With full knowledge of the foreclosure status of the Fry mortgage, First Investment continued to invoice to HUD and receive funds from HUD for the Fry mortgage for both the Subsidy and Handling Charges from June of 1992 until the time when EverHome became sub-servicer in March of 1997 with an accumulation of over $20,000 in HUD funds that had not been applied to the Fry mortgage.

29.    When EverHome became sub-servicer for First Investment, EverHome did not return the over $20,000 of HUD funds but continued to invoice to HUD for Subsidy and Handling Charges for the Fry mortgage and did receive said funds from HUD for both the Subsidy and Handling Charges into 2000.

30.    First Investment's and EverHome's full knowledge of the foreclosure status of the Fry mortgage is supported by the active participation in the courts of First Investment from 1992 through 2006 in the Fry mortgage foreclosure and the active participation of EverHome from 1997 in the Fry Chapter 13 Bankruptcy specifically pertaining to the Fry mortgage with the filing of a Proof of Claim in EverHome's former name of Alliance Mortgage and continuing litigation in the Bankruptcy Court from 1997 through present.

31.    Each filing of a Form 93102 signed original and a Form 93102 signed copy by First Investment as mortgagee and servicer from June of 1992 through February of 1997 which

included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim

to HUD for payment and the copy has constituted a false document to support a false or

fraudulent claim to HUD for payment in the context of a continuing wrong with First

Investment's approval of Everhome's participation after March of 1997.

32.    Each filing of a Form 300, or computer report as substitute, by First Investment as

mortgagee and servicer from June of 1992 through February of 1997 which included a Section

235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim to HUD for

payment or has constituted a false document to support a false or fraudulent claim to HUD for

payment in the context of a continuing wrong with First Investment's approval of Everhome's

participation after March of 1997.

33.    Each filing of a Form 93102 signed original and a Form 93102 signed copy by

First Investment as mortgagee and servicer from June of 1992 through February of 1997 which

included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or

fraudulent claim to HUD for payment and the copy has constituted a false document to support a

false or fraudulent claim to HUD for payment in the context of a continuing wrong with First

Investment's approval of Everhome's participation after March of 1997.

34.    Each filing of a Form 300, or computer report as substitute, by First Investment as

mortgagee and servicer from June of 1992 through February of 1997 which included a Section

235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim to HUD

for payment or has constituted a false document to support a false or fraudulent claim to HUD for

payment in the context of a continuing wrong with First Investment's approval of Everhome's

participation after March of 1997.

35.     Each filing of a Form 93102 signed original and a Form 93102 signed copy by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim to HUD for payment and the copy has constituted a false document to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

36.     Each filing of a Form 300, or computer report as substitute, by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Subsidy as to the Fry mortgage has constituted a false or fraudulent claim to HUD for payment or has constituted a false document to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

37.     Each filing of a Form 93102 signed original and a Form 93102 signed copy by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim to HUD for payment and the copy has constituted a false document to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

38.     Each filing of a Form 300, or computer report as substitute, by EverHome as sub-servicer for First Investment with the consent of First Investment from March of 1997 through February of 2000 which included a Section 235 Handling Charge as to the Fry mortgage has constituted a false or fraudulent claim to HUD for payment or has constituted a false document to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

39.    The contract titled "Sub-Servicing Agreement" dated February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage Company) as signed by Douglas Simson, President of First Investment Company, and Carolyn S. Cragg, Sr. Vice President of Alliance Mortgage Company, and as specifically relates to over 6000 HUD insured mortgages and an unknown number of Section 235 mortgages grants no servicing rights to EverHome and specifically states that First Investment as mortgagee continues to be the Servicer and retains all such servicing rights (agreement cover page attached as Exhibit 3). And further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of EverHome as Sub-servicer.

40.    Records received from HUD as specifically relates to the Plaintiff's mortgage indicate that servicing was transferred from First Investment to EverHome on March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a "MERGER" between First Investment and EverHome.

41.    Records received from the Departments of State of Ohio and Florida each indicate that First Investment and EverHome are individual entities and that there is no record in either state of a merger between First Investment and EverHome.

42.    As it appears that there was no merger between First Investment and EverHome per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, and per the records from the Departments of State of Ohio and Florida, thus the reporting of a merger to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

- 17 -

43.    As it appears that there was no merger between First Investment and EverHome per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, and per the records from the Departments of State of Ohio and Florida, thus the reporting of a merger to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD for payment by EverHome.

44.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus the reporting of a transfer of servicing to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

45.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus the reporting of a transfer of servicing to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD for payment by EverHome.

46.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every document filed by EverHome in

EverHome's name, as said document(s) relates to <u>any</u> of the over 6000 mortgages or to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, has constituted false document(s) to support a false or fraudulent claim to HUD for payment by EverHome.

47.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> document filed by EverHome in EverHome's name, as said document relates to <u>any</u> of the over 6000 mortgages or to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, has constituted false document(s) to support a false or fraudulent claim to HUD for payment by First Investment as true servicer.

48.    As it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> claim for insurance benefits under the HUD insurance as pertains to <u>any</u> of the over 6000 mortgages or to <u>any</u> of the unknown number of Section 235 mortgages wherein EverHome is named and First Investment was/is the mortgagee and/or servicer, has constituted a false or fraudulent claim to HUD for payment by EverHome.

49.    As it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal

Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus <u>each and every</u> claim for insurance benefits under the HUD insurance as pertains to <u>any</u> of the over 6000 mortgages or to <u>any</u> of the unknown number of Section 235 mortgages wherein EverHome is named and First Investment was/is the mortgagee and/or servicer, has constituted a false or fraudulent claim to HUD for payment by First Investment as true servicer.

50.    As it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, and EverHome is functioning under its own name as if it were the true servicer, party-in-interest and/or a party by merger to the contract for the HUD mortgage insurance, thus the contract for the HUD mortgage insurance between First Investment and HUD appears to have been violated and may not be enforceable.  And further, all filings with HUD by EverHome in EverHome's name where the true servicer is First Investment must be considered as fraudulent filings to support a fraudulent claim in the context of continued eligibility for mortgage insurance by EverHome.

51.    It appears that there has been a conspiracy between First Investment and EverHome to violate Federal Law as defined by the HUD regulations, the Code of Federal Regulations and the United States Code as each party to the written contract titled "Sub-Servicing Agreement" as signed by Douglas Simson, President of First Investment Company, and Carolyn S. Cragg, Sr. Vice President of Alliance Mortgage Company (now known as Everhome Mortgage Company), was/is a HUD approved mortgagee and servicer in its own right and thus

were/are fully knowledgeable of the regulations and law governing the servicing of HUD insured mortgages including Section 235 mortgages. As EverHome usurped the servicing rights which had not been granted by contract and/or law, and First Investment not only permitted EverHome to do so, First Investment profited by EverHome's actions and condoned said actions in multiple Courts of Law, thus it appears that a conspiracy does and has existed to violate both the letter and spirit of the Law.

52.     As it appears that there was no merger and no transfer of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the United States Code between EverHome and "UNKNOWN MORTGAGE COMPANIES A, B, and C" (excluding First Investment) and as per other written contracts with other companies which may or may not be titled "Sub-Servicing Agreement" between EverHome and the "UNKNOWN MORTGAGE COMPANIES", thus any document filed or any 235 subsidy or handling charge invoiced or any claim for insurance benefits under the HUD mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235 mortgages wherein EverHome is named and EverHome is not the true mortgagee or servicer, may constitute a false document to support a false or fraudulent claim to HUD for payment or may constitute a false or fraudulent claim to HUD for payment by EverHome and equally constitute a false document and/or false or fraudulent claim to HUD for payment by the "UNKNOWN MORTGAGE COMPANIES".


## HUD'S SECTION 235 PROGRAM

53.     HUD's Section 235 Program (the "235" Program) is defined under section 235 of the National Housing Act, 12 U.S.C. § 1715z. The purpose of the section 235 program is to

- 21 -

bring home ownership to low income groups by providing mortgage insurance and by making mortgage assistance or "subsidy" payments to the mortgagee on behalf of the mortgagor.  The assistance or "subsidy" payments are designed to reduce the cost of the mortgage to the equivalent costs of a mortgage bearing interest at a lower annual rate than the market rate available at the time of purchase, 12 U.S.C. §§ 1715z(c)(2) and 1715z(i).

54.    The HUD assistance or "subsidy" is based upon family composition and income adjusted annually or as income changes.  In order to qualify for HUD assistance or "subsidy", both the mortgagee and mortgagor must comply with all the applicable rules and regulations of the Department of Housing and Urban Development, and submit to that agency's supervision. The operations of First Investment, as mortgagee and servicer, and EverHome, as sub-servicer, insofar as they affect section 235 homeowners like plaintiff, are extensively controlled by federal statute and regulation. See e. g., 24 C.F.R. §§ 235.1 to 235.499.

55.    The abovementioned 24 C.F.R. §§ 235.1 to 235.499 are specific for section 235 type mortgages and are extensions of the administration and servicing regulations codified under 24 C.F.R. 203 which are controlling for all mortgages insured by HUD wherein First Investment is mortgagee and servicer and EverHome, by contract with First Investment, is sub-servicer.

56.    Servicing of HUD insured and Section 235 mortgages per the HUD Manual 4330.1 revision 5 "Administration of Insured Home Mortgages" ("The HUD Manual"):

"1-1    GOAL. The Congress has adopted a national housing goal expressed as "a decent home and a suitable living environment for every American family".
        A.    HUD's Role. HUD is charged with implementing the programs enacted by Congress to achieve this goal.
        B.    Housing's Role. The Office of Housing's role is to further program objectives by exercising effective management practices while protecting the interests of HUD with prudent fiscal management. For the most part, these programs are carried out through the private mortgage markets, with

HUD-approved mortgagees originating and servicing individual mortgages.

1-2    HUD MONITORING. This Handbook provides procedural standards and guidelines that must be followed when servicing an FHA/HUD-insured mortgage regardless of the entity holding and/or servicing the mortgage. The mortgagee's servicing operations will be monitored and, where necessary, corrective action will be required. Refusal to take the corrective action or continued noncompliance with HUD requirements will result in the Department taking appropriate action (i.e., including, but not necessarily limited to, an administrative and/or monetary sanction against that mortgagee (also, see Paragraphs 8-7F1 and 8-7G).

> NOTE: Withdrawal of HUD approval may result in the mortgagee's debarment from doing business with any Federal government agency under government-wide debarment regulations (24 CFR 24).

1-3    SERVICING OBJECTIVES. All servicing policies are directed toward achieving the following basic objectives:

A.    implementing the national housing goal of "a decent home and a suitable living environment for every American family";

B.    protecting HUD's interest in the insured mortgage (i.e., minimizing the probability of an insured mortgage terminating in default and foreclosure, and by minimizing HUD's loss where claims cannot be avoided);

C.    encouraging private investment in HUD-insured home mortgages at the lowest effective cost to mortgagors; and

D.    assuring an adequate standard of fair dealing among all participants in a HUD-insured mortgage transaction.

1-4.    MORTGAGEE RESPONSIBILITY (24 CFR 203.500). HUD regulations identify what the Secretary considers to be acceptable standards and "prudent servicing" when mortgagees service HUD-insured mortgages. HUD expects approved mortgagees to develop and implement policies and practices consistent with those standards and to prudently service loans.

A.    Servicing Of Account. In accordance with 24 CFR 203.502, effective after January 10, 1994, all mortgagees who wish to service FHA-insured mortgages must be approved by the Secretary. The mortgagee shall remain fully responsible to the Secretary for proper servicing, and the actions of its servicer shall be considered to be the actions of the mortgagee. The servicer also shall be fully responsible to the Secretary for its actions as a servicer. ...

6-11    CHANGE OF SERVICER.

C.    Responsibilities.

2.    If the new servicer is HUD approved, HUD will hold the servicer equally responsible with the holding mortgagee."

(underlines added)

57.    Billing of assistance and handling charges for Section 235 mortgages per the HUD

Manual 4330.1 revision 5 "Administration of Insured Home Mortgages" ("The HUD Manual"):

10-1    GENERAL (24 CFR 235). Under the Section 235 program, HUD assists
mortgagors in making their monthly mortgage payments by paying directly to the
mortgagee a portion of the mortgagor's monthly payment <u>as long as the mortgagor remains
eligible for subsidy under this program</u>.

Servicing of Section 235 mortgages is generally the same as that described in the previous
chapters of this handbook for mortgages insured under other HUD programs, except this
program has added requirements due to the assistance payments contract (Subpart C of 24
CFR 235)."

10-21  BILLING FOR ASSISTANCE/HANDLING CHARGES. In order to receive
Section 235 Original, Revised, Revised with Recapture or Revised, Recapture/10 Program
assistance payments and handling charges, <u>mortgagees must submit billings to HUD on a
monthly basis using an original and one copy of Form HUD-93102</u>, Mortgagee's
Certification and Application for Assistance or Interest Reduction Payments (Appendix
46). <u>Both the original and the copy of the Form-HUD-93102 must contain original
signatures of an authorized mortgagee official</u>. ...

C.    Submission/Completion Of Form HUD-300. <u>A Form HUD-300</u>, Monthly
Summary of Assistance Payments Due Under Sections 235(b), 235(j), or
235(i), or of Interest Reduction Payments Due Under Section 236, (see
Appendix 48) <u>must accompany the completed Form HUD-93102</u>. ...

E.    Mortgagee Liability (24 CFR 235.361(b)). <u>Mortgagees are responsible
for the accuracy of the billings and shall be held liable for fraud or false
certification made on these billings</u> (see Paragraph 10-28B). <u>All billings
must be signed by an authorized mortgagee official. Improper billings may
result in the imposition of substantial financial penalties as the Program
Fraud Civil Remedies Act applies to assistance payments.</u>

NOTE: <u>Mortgagee signing officials should give special attention
to the meaning of the certification signed by authorized mortgagee
officials on Form HUD-93102. The signing official is certifying,
subject to the Program Fraud Civil Remedies Act, that</u>: ...

3.    <u>the bill does not include amounts on behalf of mortgagors
not eligible for assistance in accordance with provisions
set forth in 24 CFR 235 and as set forth in this
Handbook</u>; ...

<u>A determination made upon review that certification to the above was
false may result in the imposition of substantial financial penalties</u>."

10-29  REPAYMENT OF OVERPAID ASSISTANCE (24 CFR 235.361).
      A.    Overpayments Caused By The Mortgagee. <u>The mortgagee must refund to HUD all overpaid assistance and all handling charges for each month during which there was an overpayment, plus interest computed at the rate of seven percent per annum on the entire amount from the date of the first overpayment when an overpayment results from the following circumstances:</u>
            1.    <u>fraud or misrepresentation on the part of the mortgagee ...</u>"
(underlines added)

58.      HUD does not define in the context of HUD insured mortgages the entity of "Sub-servicer" and thus HUD does not define any rights of a sub-servicer to act in its own name in place of the true servicer nor does HUD grant any rights to a sub-servicer in the context of a party to the mortgage insurance contract between HUD and the true servicer.  This information was provided per the request to HUD by the Plaintiff through the offices of Congressman English for definition of "Sub-servicer" and/or "sub-servicer rights" as detailed above and attached as Exhibit 2.  AND, per 24 CFR 203.433(a)(2):

"The Commissioner shall have no obligation to recognize or deal with any party other than the mortgagee of record with respect to the rights, benefits and obligations of the mortgagee under the contract of insurance."

## Particularity and F.R.C.P. 9(b)

59.      In reference to Particularity and F.R.C.P. 9(b), the Plaintiff has presented that First Investment and EverHome are required by HUD regulations and have filed monthly, from 1992 through present, an original and copy Form 93102 and a detailed Form 300 to support their billings to HUD for "Subsidy" and "Handling Fees", and have received payment on their claims, which should meet the general "who, what, where, when, and how" requirements of the "Act". The specifics of each individual filing with name of each signatory, date, content, claim, etc. would be too voluminous to be included in this complaint. However, the following information

has been made available by HUD through a Freedom of Information Act (FOIA) and Privacy Act (PA) request from March 16, 2004. The information was finally received October 12, 2006. It is a package of over 4,500 pages of HUD 235 "Subsidy" and "Handling Fee" documents containing copies of most of the HUD assistance billings by Everhome as sub-servicer for First Investment from January of 2000 through May of 2006. A summary of the thousands of pages, including names, dates and amounts is attached as EXHIBIT 4.

60.    The FOIA package received October 12, 2006, includes copies of **76** of the monthly signed HUD Form-93102, **70** of the monthly computer reports as substitutes for the HUD Form-300, and **948** other signed copies of the Form-93102 or other signed forms as relates to changes in subsidy status of various mortgages. This six year five month collection of documents contains copies of **1,024 signed documents** representing **25,463 assisted mortgage Form-300 detail lines** with **assistance ("Subsidy") of $5,471,862.02** and **Handling Fees of $72,160.00. Each of these specific documents and/or detail lines must be considered as false or fraudulent documents either invoicing HUD or supporting false claims to HUD, and, all of the "Subsidy" and "Handling Fees" received must be considered as having been received under false or fraudulent circumstances.**

61.    As detailed in footnote 2 below, from the totals shown above, this averages monthly to 13 signed forms, 335 assisted mortgages with assistance ("Subsidy") of $71,998.00 and Handling Fees of $949.00. For purposes of example of this amended complaint, a copy of EverHome's original filed Form-93102 of January 2000 is attached as EXHIBIT 5 and the Interest Approximation calculation is attached as EXHIBIT 6.

62.    There are multiple FOIA and PA requests still outstanding. Copies of specific

documents available from HUD under the FOIA is limited to six years unless said documents have

special significance and are held for a longer period of time. Specific copies of older documents

have been requested and are being researched as to their availability. Copies of older First

Investment and EverHome documents, while not directly available from HUD, are by HUD

regulation to be maintained by the servicer and made available to HUD for review or audit, and as

such should be made available through discovery. The Plaintiff personally has over 5,000 pages

of historical documentation specifically related to his mortgage and the servicing by First

Investment since 1982 and EverHome since 1997.


## COUNT 1

63.    Plaintiff repeats and realleges paragraphs 1 - 62.

64.    This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

65.    The mortgage of William L. Fry as relates to this suit was a Section 235 mortgage

with First Investment as the mortgagee and servicer. (The Fry mortgage was successfully

refinanced in August of 2006 through an Order of the Bankruptcy Court).

66.    Said Fry mortgage was originally eligible to receive the HUD Section 235 subsidy

in September of 1982 and continued eligibility through May of 1992.

67.    In September of 1992 First Investment initiated foreclosure proceedings against

the Fry mortgage with a notice of intention to foreclose with a default date of June 1, 1992. This

was followed by the filing of a suit in foreclosure in December of 1992, the withdrawal of the suit

in April of 1993 which First Investment followed on the same day by the initiation of a second

foreclosure proceeding which again was followed by a second suit in foreclosure which was reduced to judgment in 1996 and was bound by the automatic stay as of August 15, 1997, from the United States Bankruptcy Court of the Western District of Pennsylvania, sitting in Erie, until the mortgage was refinanced in August of 2006.

68.    First Investment was/is fully cognizant of the foreclosure status of the Fry mortgage as First Investment continually pursued the foreclosure in the state and federal courts from 1992 through 2006.

69.    The Section 235 subsidy for the Fry mortgage should have been suspended upon the initiation of foreclosure in September of 1992 with a default date of June 1, 1992, but said subsidy was not suspended.

70.    First Investment as servicer continued to invoice HUD monthly following the June of 1992 default date for both the Section 235 subsidy and the Handling Charges through February of 1997.

71.    EverHome (f.k.a. Alliance Mortgage) as sub-servicer for First Investment continued to invoice HUD for both the Section 235 subsidy and Handling Charges from March of 1997 through February of 2000.

72.    Per the HUD Manual as cited above:

"1-4.    MORTGAGEE RESPONSIBILITY (24 CFR 203.500). ...
   A.    Servicing Of Account. In accordance with 24 CFR 203.502, effective after January 10, 1994, all mortgagees who wish to service FHA-insured mortgages must be approved by the Secretary. The mortgagee shall remain fully responsible to the Secretary for proper servicing, and the actions of its servicer shall be considered to be the actions of the mortgagee. The servicer also shall be fully responsible to the Secretary for its actions as a servicer. ..."
   (underlines added)

73.    There appear to have been <u>93</u> ineligible billings <u>by First Investment as servicer and EverHome as sub-servicer for First Investment</u> to HUD for the Section 235 <u>subsidy</u> monies for the Fry mortgage from June of 1992 through February of 2000 at $392 per month which accumulates to a total of $36,456 (93 months x $392).[1]

74.    There appear to have been <u>93</u> ineligible billings <u>by First Investment as servicer and EverHome as sub-servicer for First Investment</u> to HUD for the Section 235 <u>Handling Charges</u> for the Fry mortgage from June of 1992 through February of 2000 at $3 per month which accumulates to a total of $279 (93 months x $3).

75.    Per the HUD Manual at 10-29 A., as cited above, "The mortgagee must refund to HUD all overpaid assistance and all handling charges for each month during which there was an overpayment, plus interest computed at the rate of seven percent per annum on the entire amount from the date of the first overpayment ..." which, by calculation, yields interest from June of 1992 to time of original filing of this suit in the amount of $21,856.

76.    The actions of <u>First Investment and Everhome as sub-servicer for First Investment</u> from June 1, 1992, through October 1, 2004, has damaged HUD and the United States in the approximate amount of $58,591 ($36,456 subsidy + $279 handling charges + $21,856 interest).

77.    By the actions of <u>First Investment and Everhome as sub-servicer for First Investment</u> from June 1, 1992, through October 1, 2004, the <u>First Investment</u> is liable to HUD and the United States for three times the calculated damages of $58,591 in violation of 31 U.S.C. § 3729 for a calculated civil penalty of $175,773.

78.    Each and every <u>Form 300</u>, or computer report as substitute, submitted <u>by First</u>

_____

[1]    All monetary amounts are rounded to the nearest dollar.

Investment to HUD containing the <u>line item invoice for the Fry mortgage</u> Section 235 <u>subsidy</u> information from June of 1992 through February of 1997 (57 monthly Form 300 or computer report substitute) has constituted a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment</u> is liable for presenting 57 false Form 300, or computer report as substitute, invoices to HUD for payment of ineligible Section 235 subsidy with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

79.    Each and every <u>Form 300</u>, or computer report as substitute, submitted <u>by First Investment</u> to HUD containing the <u>line item invoice for the Fry mortgage</u> Section 235 <u>handling charge</u> information from June of 1992 through February of 1997 (57 monthly Form 300 or computer report substitute) has constituted a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment</u> is liable for presenting 57 false Form 300, or computer report as substitute, invoices for payment of ineligible Section 235 handling charges with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

80.    Each and every <u>original signed Form 93102</u> submitted <u>by First Investment</u> to HUD containing Fry mortgage Section 235 <u>subsidy</u> information from June of 1992 through February of 1997 (57 monthly Form 93102) has constituted a false document to HUD in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment</u> is liable for presenting 57 false Form 93102 signed original documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

81.    Each and every required <u>signed copy of Form 93102</u> submitted <u>by First Investment</u> to HUD containing Fry mortgage Section 235 <u>subsidy</u> information from June of 1992 through February of 1997 (57 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment</u> is liable for presenting 57 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

82.    Each and every <u>original signed Form 93102</u> submitted <u>by First Investment</u> to HUD containing Fry mortgage Section 235 <u>handling charge</u> information from June of 1992 through February of 1997 (57 monthly Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment</u> is liable for presenting 57 false Form 93102 original signed documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of $570,000.

83.    Each and every required <u>signed copy of Form 93102</u> submitted by <u>First Investment</u> to HUD containing Fry mortgage Section 235 <u>handling charge</u> information from June of 1992 through February of 1997 (57 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment</u> is liable for presenting 57 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $285,000 to a maximum penalty of

$570,000.

84.     Each and every Form 300, or computer report as substitute, submitted to HUD by EverHome (formerly known as Alliance Mortgage) as sub-servicer for First Investment containing the line item invoice for the Fry mortgage Section 235 subsidy information from March of 1997 through February of 2000 (36 monthly Form 300 or computer report substitute) has constituted a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729.  Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome and is liable for presenting 36 false Form 300, or computer report as substitute, invoices for payment of ineligible Section 235 subsidy with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

85.     Each and every Form 300, or computer report as substitute, submitted to HUD by EverHome as sub-servicer for First Investment containing the line item invoice for the Fry mortgage Section 235 handling charge information from March of 1997 through February of 2000 (36 monthly Form 300 or computer report substitute) has constituted a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729.  Thus, First Investment as mortgagee and servicer is responsible for the actions of EverHome and is liable for presenting 36 false Form 300, or computer report as substitute, invoices for payment of ineligible Section 235 handling charges with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

86.     Each and every original signed Form 93102 submitted to HUD by EverHome as

- 32 -

sub-servicer for First Investment containing Fry mortgage Section 235 <u>subsidy</u> information from March of 1997 through February of 2000 (36 monthly Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment as mortgagee and servicer is responsible for the actions of</u> <u>EverHome</u> and is liable for presenting 36 false Form 93102 original signed documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

87. Each and every required <u>signed copy of Form 93102</u> submitted to HUD <u>by</u> <u>EverHome as sub-servicer for First Investment</u> containing Fry mortgage Section 235 <u>subsidy</u> information from March of 1997 through February of 2000 (36 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment as mortgagee and servicer is</u> <u>responsible for the actions of EverHome</u> and is liable for presenting 36 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

88. Each and every <u>original signed Form 93102</u> submitted to HUD <u>by EverHome as</u> <u>sub-servicer for First Investment</u> containing Fry mortgage Section 235 <u>handling charge</u> information from March of 1997 through February of 2000 (36 monthly Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, <u>First Investment as mortgagee and servicer is responsible</u> <u>for the actions of EverHome</u> and is liable for presenting 36 false Form 93102 original signed

documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

89.    Each and every required <u>signed copy of Form 93102</u> submitted to HUD <u>by EverHome as sub-servicer for First Investment</u> containing Fry mortgage Section 235 <u>handling charge</u> information from March of 1997 through February of 2000 (36 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729.  Thus, <u>First Investment as mortgagee and servicer is responsible for the actions of EverHome</u> and is liable for presenting 36 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

90.    **CONCLUSION:** The information presented in this **COUNT 1** makes clear that the actions of Defendant First Investment and EverHome as sub-servicer for First Investment in continuing to treat the ex rel. Plaintiff's HUD Section 235 mortgage as "active" when in foreclosure since 1992 and thus continued to submit documents seeking payment of a HUD monthly monetary "Subsidy" and HUD "Handling Fee" which were false and/or fraudulent.  The Defendants presented or caused to be presented to an agency of the United States (HUD) a claim for payment of a "Subsidy" and a "Handling Fee".  The Defendants' claims for payment were false and/or fraudulent and the Defendants knew the claims for payment were false and/or fraudulent. The Defendants had actual knowledge of the information making the claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so

- 34 -

submitted; or acted in reckless disregard of the truth or falsity of the information.  <u>For over eight years First Investment accepted the "Subsidy" funds and "Handling Fees" from HUD acquired under the false and/or fraudulent circumstances</u>.


## COUNT 2

91.     Plaintiff repeats and realleges paragraphs 1 - 90.

92.     This count is specific to EverHome as sub-servicer for First Investment.

93.     The mortgage of William L. Fry was a Section 235 mortgage with First Investment as the mortgagee and servicer, originally eligible to receive the HUD Section 235 subsidy in September of 1982 and continued eligibility through May of 1992, the date of default of the initiated foreclosure in September of 1992 by First Investment which was followed by a second suit in foreclosure which was reduced to judgment in 1996 and was bound by the automatic stay from August 15, 1997, by the United States Bankruptcy Court until the mortgage was refinanced in August of 2006.

94.     EverHome was fully cognizant of the foreclosure status of the Fry mortgage as EverHome (formerly Alliance Mortgage Company) filed a Proof of Claim under its own name in the Bankruptcy Court in 1997 and had been directly involved in litigation from 1997 through 2006 in multiple federal courts and had continually pursued attempting to open the automatic stay in the Bankruptcy Court so as to complete the foreclosure in the state court until the mortgage was refinanced in August of 2006.

95.     The Section 235 subsidy for the Fry mortgage should have been suspended upon the initiation of foreclosure in September of 1992 with a default date of June 1, 1992, but said

subsidy was not suspended.

96.    First Investment as servicer continued to invoice HUD monthly following the June of 1992 default date for both the Section 235 subsidy and the Handling Charges through February of 1997 whereupon EverHome became sub-servicer to First Investment on March 1, 1997.

97.    Per the HUD Manual as cited above:

"6-11   CHANGE OF SERVICER.
    C.    Responsibilities.
        2.    If the new servicer is HUD approved, <u>HUD will hold the servicer equally responsible with the holding mortgagee</u>."
    (underlines added)

Therefore, EverHome is equally responsible for acts of First Investment as the previous servicer and is also responsible for its own actions.

98.    <u>EverHome</u> as sub-servicer for First Investment and having accepted for sub-servicing the Fry mortgage in a foreclosure status did not return to HUD $22,344 in subsidy funds, $171 in handling charges and $3,677 in interest for which the mortgage was previously ineligible and continued to invoice HUD for both the Section 235 subsidy and Handling Charges from March of 1997 through February of 2000.

99.    There appear to have been 57 ineligible billings by First Investment as servicer and 36 ineligible billings by EverHome as sub-servicer for First Investment to HUD for the Section 235 <u>subsidy</u> monies for the Fry mortgage from June of 1992 through February of 2000 at $392 per month which accumulates to a total of $36,456 (93 months x $392), to which <u>EverHome</u> is equally responsible.

100.   There appear to have been 57 ineligible billings by First Investment as servicer and 36 ineligible billings by EverHome as sub-servicer for First Investment to HUD for the Section

235 Handling Charges for the Fry mortgage from June of 1992 through February of 2000 at $3 per month which accumulates to a total of $279 (93 months x $3), to which EverHome is equally responsible.

101.    Per the HUD Manual at 10-29 A., as cited above, "The mortgagee must refund to HUD all overpaid assistance and all handling charges for each month during which there was an overpayment, plus interest computed at the rate of seven percent per annum on the entire amount from the date of the first overpayment ..." which, by calculation, yields interest from June of 1992 to time of filing of suit in the amount of $21,856 , to which EverHome is equally responsible.

102.    The actions of First Investment and Everhome from June 1, 1992, through October 1, 2004, has damaged HUD and the United States in the approximate amount of $58,591 ($36,456 subsidy + $279 handling charges + $21,856 interest), to which EverHome is equally responsible.

103.    By the actions of First Investment and Everhome from June 1, 1992, through October 1, 2004, the First Investment and EverHome are liable to HUD and the United States for three times the calculated damages of $58,591 in violation of 31 U.S.C. § 3729 for a calculated civil penalty of $175,773, to which EverHome is equally responsible.

104.    Each and every Form 300, or computer report as substitute, submitted to HUD by EverHome as sub-servicer for First Investment containing the line item invoice for the Fry mortgage Section 235 subsidy information from March of 1997 through February of 2000 (36 monthly Form 300 or computer report substitute) has constituted a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729.  Thus, EverHome is responsible for its own actions and is liable for presenting 36 false Form 300, or computer report as substitute, invoices

for payment of ineligible Section 235 subsidy with a civil penalty of not less than $5,000 and not

more than $10,000 for each such document presented for a calculated minimum penalty of

$180,000 to a maximum penalty of $360,000.

105.    Each and every Form 300, or computer report as substitute, submitted to HUD by

EverHome as sub-servicer for First Investment containing the line item invoice for the Fry

mortgage Section 235 handling charge information from March of 1997 through February of

2000 (36 monthly Form 300 or computer report substitute) has constituted a false or fraudulent

claim to HUD for payment in violation of 31 U.S.C. § 3729.  Thus, EverHome is responsible for

its own actions and is liable for presenting 36 false Form 300, or computer report as substitute,

invoices for payment of ineligible Section 235 handling charges with a civil penalty of not less

than $5,000 and not more than $10,000 for each such document presented for a calculated

minimum penalty of $180,000 to a maximum penalty of $360,000.

106.    Each and every original signed Form 93102 submitted to HUD by EverHome as

sub-servicer for First Investment containing Fry mortgage Section 235 subsidy information from

March of 1997 through February of 2000 (36 monthly Form 93102) has constituted a false

document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C.

§ 3729.  Thus, EverHome is responsible for its own actions and is liable for presenting 36 false

Form 93102 original signed documents with a civil penalty of not less than $5,000 and not more

than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to

a maximum penalty of $360,000.

107.    Each and every required signed copy of Form 93102 submitted to HUD by

EverHome as sub-servicer for First Investment containing Fry mortgage Section 235 subsidy

information from March of 1997 through February of 2000 (36 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for presenting 36 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

108.    Each and every original signed Form 93102 submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235 handling charge information from March of 1997 through February of 2000 (36 monthly Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for presenting 36 false Form 93102 original signed documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

109.    Each and every required signed copy of Form 93102 submitted to HUD by EverHome as sub-servicer for First Investment containing Fry mortgage Section 235 handling charge information from March of 1997 through February of 2000 (36 monthly signed copies Form 93102) has constituted a false document in support of a false or fraudulent claim to HUD for payment in violation of 31 U.S.C. § 3729. Thus, EverHome is responsible for its own actions and is liable for presenting 36 false signed copies of the Form 93102 documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented for a calculated minimum penalty of $180,000 to a maximum penalty of $360,000.

110.    **CONCLUSION:** The information presented in this **COUNT 2** makes clear that

the actions of <u>EverHome</u>, after acquiring the sub-servicing from First Investment, became

responsible for First Investment's actions as well as its own actions, and in continuing to treat the

ex rel. Plaintiff's HUD Section 235 mortgage as "active" when in foreclosure since 1992 and thus

continued to submit documents seeking payment of a HUD monthly monetary "Subsidy" and

HUD "Handling Fee" which were false and/or fraudulent.  EverHome presented or caused to be

presented to an agency of the United States (HUD) a claim for payment of a "Subsidy" and a

"Handling Fee".  The Defendants' claims for payment were false and/or fraudulent and the

Defendants knew the claims for payment were false and/or fraudulent.  The Defendants had actual

knowledge of the information making the claims for payment false and/or fraudulent; or acted in

deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless

disregard of the truth or falsity of the information.  For over eight years the Defendants accepted

the "Subsidy" funds and "Handling Fees" from HUD acquired under the false and/or fraudulent

circumstances, and for three of those years, EverHome acquired said funds and fees for First

Investment.

**COUNT 3**

111.    Plaintiff repeats and realleges paragraphs 1 - 110.

112.    This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

113.    The contract titled "Sub-Servicing Agreement" dated February 28, 1997, between

First Investment and EverHome (formerly Alliance Mortgage Company), as signed by Douglas

Simson, President of First Investment Company, and Carolyn S. Cragg, Sr. Vice President of

- 40 -

Alliance Mortgage Company, and as specifically relates to over 6000 HUD insured mortgages and an unknown number of Section 235 mortgages, grants no servicing rights to EverHome and specifically states that First Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of EverHome as Sub-servicer. AND, records received from HUD, through Plaintiff's request to HUD for the status of his mortgage, indicate that servicing was transferred from First Investment to EverHome on March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a "MERGER" between First Investment and EverHome.  BUT, records received from the Departments of State of Ohio and Florida each indicate that First Investment and EverHome are individual entities and that there is no record in either state of a merger between First Investment and EverHome.

114.    Both First Investment and EverHome as being mortgagees and HUD approved servicers in their own right, each is fully knowledgeable of the HUD regulations as to servicing of HUD insured mortgages, including Section 235 mortgages, and the HUD regulations concerning the transfer of servicing from one HUD approved servicer to another HUD approved servicer and the civil penalties for the violation of said regulations.

115.    As it appears that there was no lawful transfer of servicing between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus the reporting of a transfer of servicing to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus,

- 41 -

and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents indicating said "transfer of servicing" with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

116.    As it appears that there was no merger between First Investment and EverHome per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome and the records from the Departments of State of Ohio and Florida thus the reporting of a merger to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus, and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents indicating said "MERGER" with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

117.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every document filed by EverHome in EverHome's name, as said document(s) relates to any of the over 6000 mortgages or to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) to support a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus, and per the HUD Handbook cited above, First Investment as mortgagee

- 42 -

and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting

an unknown number of false documents with a civil penalty of not less than $5,000 and not more

than $10,000 for each such document presented.  An approximation based upon HUD provided

information referenced immediately below[2] is 982 signed forms with approximate civil penalty

from $4,910,000 to $9,820,00.

118.    As it appears that there was no transfer of servicing rights between First

Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations

or the United States Code, and as per the written contract titled "Sub-Servicing Agreement"

between First Investment and EverHome, thus <u>each and every line item</u> on <u>each and every Form

300</u>, or computer report as substitute, filed (approximately 92 monthly filings from March of 1997

through October of 2004) as to Section 235 <u>subsidy</u> by EverHome in EverHome's name, as said

document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First

Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer,

has constituted false document(s) in the context of an invoice to HUD for Section 235 subsidy as

a false or fraudulent claim to HUD for payment <u>individually for each line item</u> by First Investment

in violation of 31 U.S.C. § 3729.  Thus, and per the HUD Handbook cited above, First

---

[2]        The approximately 4,500 pages received from HUD through a Freedom of Information Act request (summary attached as EXHIBIT 4) cover a six year five month period from January of 2000 through May of 2006 and includes copies of 1,024 signed documents including 76 HUD Form-93102 representing 25,463 assisted mortgage Form-300 detail lines with assistance of $5,471,862.02 and handling fees of $72,160.00.  This averages monthly to 13 signed forms, 335 assisted mortgages with assistance of $71,998.00 and handling fees of $949.00.

        For purposes of example of this amended complaint, the approximation for the period of March of 1997 from the implementation of the Sub-Servicing Agreement through filing of suit in October of 2004 is 982 signed forms, 31,606 assisted mortgage Form-300 detail lines with assistance invoiced of $6,679,941.00 and handling fees invoiced of $89,202.00.

        A copy of EverHome's original filed Form-93102 of January 2000 is attached as EXHIBIT 5. The Interest Approximation calculation is attached as EXHIBIT 6.

Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented and the unknown amounts of subsidy claimed and/or received, and interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the amount of the damages. An approximation based upon HUD provided information (see footnote 2 above) is 982 signed forms plus 31,606 detail lines with approximate civil penalty from $162,940,000 to $325,880,000 plus $6,679,941 in subsidy claimed with $1,811,932 in approximated interest resulting in triple civil penalty of $25,475,605.

119.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every line item on each and every Form 300, or computer report as substitute, filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 handling charges by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of an invoice to HUD for Section 235 handling charges as a false or fraudulent claim to HUD for payment individually for each line item by First Investment in violation of 31 U.S.C. § 3729. Thus, and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil

penalty of not less than $5,000 and not more than $10,000 for each such document presented and the unknown amounts of subsidy claimed and/or received, and interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the amount of the damages. An approximation based upon HUD provided information (see footnote 2 above) is 982 signed forms plus 31,606 detail lines with approximate civil penalty from $162,940,000 to $325,880,000 plus $89,148 in handling charges claimed with $24,181 in approximated interest resulting in triple civil penalty of $339,988.

120.     As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every original signed Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 subsidy as a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729. Thus, and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented. An approximation is 92 signed Form 93102 originals (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

- 45 -

121.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every signed copy of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 subsidy as a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus, and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.  An approximation is 92 signed Form 93102 copies (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

122.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every original signed Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 handling charges by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee

- 46 -

and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 <u>handling charges</u> as a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus, and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.  An approximation is 92 signed Form 93102 originals (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

123.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus <u>each and every signed copy of Form 93102</u> filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 <u>handling charges</u> by EverHome in EverHome's name, as said document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 <u>handling charges</u> as a false or fraudulent claim to HUD for payment by First Investment in violation of 31 U.S.C. § 3729.  Thus, and per the HUD Handbook cited above, First Investment as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.  An approximation is 92 signed Form 93102

copies (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

124.   **CONCLUSION:** The information presented in this **COUNT 3** makes clear that the actions of First Investment and EverHome by entering into contracts and/or agreements for the sub-servicing of HUD insured mortgages, including HUD 235 mortgages with "Subsidy" and "Handling Fees" billable to HUD and requiring continuing eligibility for HUD mortgage insurance, whereby said contracts and/or agreements there were no mergers and no servicing rights were transferred were false or fraudulent. First Investment presented or caused to be presented by EverHome to an agency of the United States (HUD) specific documents, via paper filing or electronic filing, to support a claim for payment indicating a "MERGER" and transfer of servicing rights and submitted supporting documents and invoices for payment of "Subsidy" and "Handling Fees" and continuing eligibility for HUD mortgage insurance. The supporting documents and claims for payment as submitted by EverHome in EverHome's name, whether paper or electronic, were false and/or fraudulent and First Investment and EverHome knew the claims for payment were false and/or fraudulent. The Defendants had actual knowledge of the information making the claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information. For almost ten years, since the signing of the "Sub-Servicing Agreement", the Defendants accepted the "Subsidy" funds and "Handling Fees" and continuing eligibility for HUD mortgage insurance from HUD acquired under the false and/or fraudulent circumstances.

## COUNT 4

125.   Plaintiff repeats and realleges paragraphs 1 - 124.

- 48 -

126.    This count is specific to EverHome as sub-servicer for First Investment.

127.    The contract titled "Sub-Servicing Agreement" dated February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage Company) as signed by Douglas Simson, President of First Investment Company, and Carolyn S. Cragg, Sr. Vice President of Alliance Mortgage Company, and as specifically relates to over 6000 HUD insured mortgages and an unknown number of Section 235 mortgages, grants no servicing rights to EverHome and specifically states that First Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of EverHome as Sub-servicer. AND, records received from HUD, through Plaintiff's request to HUD for the status of his mortgage, indicate that servicing was transferred from First Investment to EverHome on March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a "MERGER" between First Investment and EverHome.  BUT, records received from the Departments of State of Ohio and Florida each indicate that First Investment and EverHome are individual entities and that there is no record in either state of a merger between First Investment and EverHome.

128.    Both First Investment and EverHome as being mortgagees and HUD approved servicers in their own right, each is fully knowledgeable of the HUD regulations as to servicing of HUD insured mortgages, including Section 235 mortgages, and the HUD regulations concerning the transfer of servicing from one HUD approved servicer to another HUD approved servicer and the civil penalties for the violation of said regulations.

129.    As it appears that there was no lawful transfer of servicing between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations

- 49 -

or the United States Code and the writtten contract titled "Sub-Servicing Agreement" between

First Investment and EverHome thus the reporting of a transfer of servicing to HUD in whatever

form, paper or electronic, has constituted a false document or documents to support a false or

fraudulent claim to HUD for payment by EverHome in violation of 31 U.S.C. § 3729.  Thus,

EverHome is liable for presenting an unknown number of false documents indicating said "transfer

of servicing" with a civil penalty of not less than $5,000 and not more than $10,000 for each such

document presented.

130.    As it appears that there was no merger between First Investment and EverHome

per the writtten contract titled "Sub-Servicing Agreement" between First Investment and

EverHome and the records from the Departments of State of Ohio and Florida thus the reporting

of a merger to HUD in whatever form, paper or electronic, has constituted a false document or

documents to support a false or fraudulent claim to HUD for payment by EverHome in violation

of 31 U.S.C. § 3729.  Thus, EverHome is liable for presenting an unknown number of false

documents indicating said "MERGER" with a civil penalty of not less than $5,000 and not more

than $10,000 for each such document presented.

131.    As it appears that there was no transfer of servicing rights between First

Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations

or the United States Code and as per the written contract titled "Sub-Servicing Agreement"

between First Investment and EverHome, thus each and every document filed by EverHome in

EverHome's name, as said document(s) relates to any of the over 6000 mortgages or to any of the

unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or

servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) to

support a false or fraudulent claim to HUD for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, <u>EverHome</u> is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented. An approximation based upon HUD provided information is 982 signed forms (see footnote 2 above) with approximate civil penalty from $4,910,000 to $9,820,00.

132.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus <u>each and every line item</u> on <u>each and every Form 300</u>, or computer report as substitute, filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 <u>subsidy</u> by EverHome in EverHome's name, as said document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of an invoice to HUD for Section 235 <u>subsidy</u> as a false or fraudulent claim to HUD for payment <u>individually for each line item</u> by EverHome in violation of 31 U.S.C. § 3729. Thus, <u>EverHome</u> is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented and the unknown amounts of subsidy claimed and/or received, and interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the amount of the damages. An approximation based upon HUD provided information is 982 signed forms plus 31,606 detail lines (see footnote 2 above) with approximate civil penalty from $162,940,000 to $325,880,000 plus $6,679,941 in subsidy claimed with $1,811,932 in

approximated interest resulting in triple civil penalty of $25,475,605.

133.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus <u>each and every line item</u> on <u>each and every Form 300</u>, or computer report as substitute, filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 <u>handling charges</u> by EverHome in EverHome's name, as said document(s) relates to <u>any</u> of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of an invoice to HUD for Section 235 <u>handling charges</u> as a false or fraudulent claim to HUD for payment <u>individually for each line item</u> by EverHome in violation of 31 U.S.C. § 3729.  Thus, <u>EverHome</u> is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented and the unknown amounts of subsidy claimed and/or received, and interest from the date of receipt at seven percent (7%) per annum plus civil penalty at three times the amount of the damages.  An approximation based upon HUD provided information is 982 signed forms plus 31,606 detail lines (see footnote 2 above) with approximate civil penalty from $162,940,000 to $325,880,000 plus $89,148 in handling charges claimed with $24,181 in approximated interest resulting in triple civil penalty of $339,988.

134.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement"

between First Investment and EverHome, thus each and every original signed Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 subsidy as a false or fraudulent claim to HUD for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented. An approximation is 92 signed Form 93102 originals (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

135.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every signed copy of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 subsidy by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 subsidy as a false or fraudulent claim to HUD for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of false documents with a civil penalty of

not less than $5,000 and not more than $10,000 for each such document presented. An approximation is 92 signed Form 93102 copies (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

136.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every original signed Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section 235 handling charges by EverHome in EverHome's name, as said document(s) relates to any of the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s) in the context of false document in support of an invoice to HUD for Section 235 handling charges as a false or fraudulent claim to HUD for payment by EverHome in violation of 31 U.S.C. § 3729. Thus, EverHome is liable for presenting an unknown number of false documents with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented. An approximation is 92 signed Form 93102 originals (see footnote 2 above) with approximate civil penalty from $460,000 to $920,000.

137.    As it appears that there was no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code, and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, thus each and every signed copy of Form 93102 filed (approximately 92 monthly filings from March of 1997 through October of 2004) as to Section

- 54 -

235 <u>handling charges</u> by EverHome in EverHome's name, as said document(s) relates to <u>any</u> of

the unknown number of Section 235 mortgages wherein First Investment was/is the mortgagee

and/or servicer, and EverHome is by contract the sub-servicer, has constituted false document(s)

in the context of false document in support of an invoice to HUD for Section 235 <u>handling</u>

<u>charges</u> as a false or fraudulent claim to HUD for payment by EverHome in violation of 31 U.S.C.

§ 3729.  Thus, <u>EverHome</u> is liable for presenting an unknown number of false documents with a

civil penalty of not less than $5,000 and not more than $10,000 for each such document

presented.  An approximation is 92 signed Form 93102 copies (see footnote 2 above) with

approximate civil penalty from $460,000 to $920,000.

      138.    **CONCLUSION:** The information presented in this **COUNT 4** makes clear that

the actions of First Investment and EverHome by entering into contracts and/or agreements for

the sub-servicing of HUD insured mortgages, including HUD 235 mortgages with "Subsidy" and

"Handling Fees" billable to HUD and requiring continuing eligibility for HUD mortgage

insurance, whereby said contracts and/or agreements there were no mergers and no servicing

rights were transferred were false or fraudulent.  EverHome presented or caused to be presented

to an agency of the United States (HUD) specific documents in EverHome's name, via paper

filing or electronic filing, to support a claim for payment indicating a "MERGER" and transfer of

servicing rights and submitted supporting documents and invoices for payment of "Subsidy" and

"Handling Fees" and continuing eligibility for HUD mortgage insurance.  The supporting

documents and claims for payment as submitted by EverHome in EverHome's name, whether

paper or electronic, were false and/or fraudulent and First Investment and EverHome knew the

claims for payment were false and/or fraudulent.  The Defendants had actual knowledge of the

information making the claims for payment false and/or fraudulent; or acted in deliberate

ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of

the truth or falsity of the information.  For almost ten years, since the signing of the "Sub-

Servicing Agreement", the Defendants accepted the "Subsidy" funds and "Handling Fees" and

continuing eligibility for HUD mortgage insurance from HUD acquired under the false and/or

fraudulent circumstances.

## COUNT 5

139.    Plaintiff repeats and realleges paragraphs 1 - 138.

140.    This count is specific to First Investment with its responsibilities as mortgagee,

servicer and the responsibility for the actions of EverHome as sub-servicer.

141.    The contract titled "Sub-Servicing Agreement" dated February 28, 1997, between

First Investment and EverHome (formerly Alliance Mortgage Company) as signed by Douglas

Simson, President of First Investment Company, and Carolyn S. Cragg, Sr. Vice President of

Alliance Mortgage Company, and as specifically relates to over 6000 HUD insured mortgages and

an unknown number of Section 235 mortgages grants no servicing rights to EverHome and

specifically states that First Investment as mortgagee continues to be the Servicer and retains all

such servicing rights.  And further, said Sub-Servicing Agreement specifically limits and restricts

the sub-servicing duties of EverHome as Sub-servicer. AND, records received from HUD,

through Plaintiff's request to HUD for the status of his mortgage, indicate that servicing was

transferred from First Investment to EverHome on March 1, 1997, and that, per the HUD

records, said transfer of servicing was the result of a "MERGER" between First Investment and

EverHome.  BUT, records received from the Departments of State of Ohio and Florida each

indicate that First Investment and EverHome are individual entities and that there is no record in either state of a merger between First Investment and EverHome.

142.    Both First Investment and EverHome as being mortgagees and HUD approved servicers in their own right, each is fully knowledgeable of the HUD regulations as to servicing of HUD insured mortgages, including Section 235 mortgages, and the HUD regulations concerning the transfer of servicing from one HUD approved servicer to another HUD approved servicer and the civil penalties for the violation of said regulations.

143.    As it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome as defined by the HUD regulations, the Code of Federal Regulations or the United States Code and as per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome, and EverHome is functioning under its own name as if it were the true servicer, party-in-interest and/or a party by merger to the contract for the HUD mortgage insurance, thus the contract for the HUD mortgage insurance between First Investment and HUD has been violated with the full knowledge of First Investment and may no longer be enforceable.

144.    As it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome and the records from the Departments of State of Ohio and Florida thus the reporting of a merger or transfer of servicing to HUD in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim for continued eligibility and/or participation to the contract for the HUD mortgage insurance by First Investment in violation of 31 U.S.C. § 3729.  Thus, First Investment

as mortgagee and servicer is responsible for the actions of EverHome as sub-servicer and is liable for presenting an unknown number of false documents indicating "MERGER"or "transfer of servicing rights" to support continued eligibility and/or participation to the contract for the HUD mortgage insurance with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

145.    **CONCLUSION:** The information presented in this **COUNT 5** makes clear that the actions of Defendants First Investment and EverHome in allowing EverHome to file any documents under EverHome's own name to support continued eligibility and/or participation to the contract for the HUD mortgage insurance where EverHome was not given the rights as servicer were false and/or fraudulent.  The Defendants presented or caused to be presented to an agency of the United States (HUD) supporting documents for continued eligibility and/or participation to the contract for the HUD mortgage insurance in anticipation of a possible, existing or future claim for payment mortgage insurance.  The Defendants' supporting documents were false and/or fraudulent and the Defendants knew the documents were false and/or fraudulent.  The Defendants had actual knowledge of the information making the documents and subsequent claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information.  Any mortgage insurance claims presented by EverHome to HUD wherein EverHome is not the true holder or servicer since the signing of the "Sub-Servicing Agreement" must be considered as having been acquired under the false and/or fraudulent circumstances.

**COUNT 6**

146.    Plaintiff repeats and realleges paragraphs 1 - 145.

147.    This count relates to both First Investment with its responsibilities as mortgagee, servicer and responsible for the actions of EverHome as sub-servicer, AND, EverHome as sub-servicer to First Investment, as each has profited from the improper acts of the other.

148.    The contract titled "Sub-Servicing Agreement" dated February 28, 1997, between First Investment and EverHome (formerly Alliance Mortgage Company), as signed by Douglas Simson, President of First Investment Company, and Carolyn S. Cragg, Sr. Vice President of Alliance Mortgage Company, and as specifically relates to over 6000 HUD insured mortgages and an unknown number of Section 235 mortgages, grants no servicing rights to EverHome and specifically states that First Investment as mortgagee continues to be the Servicer and retains all such servicing rights.  And further, said Sub-Servicing Agreement specifically limits and restricts the sub-servicing duties of EverHome as Sub-servicer.  AND, records received from HUD indicate that servicing was transferred from First Investment to EverHome on March 1, 1997, and that, per the HUD records, said transfer of servicing was the result of a "MERGER" between First Investment and EverHome.  BUT, records received from the Departments of State of Ohio and Florida each indicate that First Investment and EverHome are individual entities and that there is no record in either state of a merger between First Investment and EverHome.

149.    EverHome and First Investment, as parties to the written contract titled "Sub-Servicing Agreement" dated February 28, 1997, each was/is a HUD approved mortgagee and servicer and thus were/are fully knowledgeable of the regulations and law governing the servicing of HUD insured mortgages including Section 235 mortgages, and are cognizant of the warnings and possible penalties for the filing of improper documents with HUD.

150.    As it appears that documents were filed with HUD stating that there was a merger between First Investment and EverHome, and that the servicing has been transferred from First Investment to EverHome, and EverHome is interacting with HUD in EverHome's own name as if it were the true Servicer of the HUD insured mortgages and 235 mortgages where First Investment is the true Servicer and did not assign said servicing rights, and First Investment appears to condone and to profit from EverHomes actions, it appears that a conspiracy does exist between First Investment and EverHome to violate both the letter and spirit of Federal Law as defined by the HUD regulations, the Code of Federal Regulations and the United States Code, and specifically the violation of 31 U.S.C. § 3729.

151.    As it appears that there was no merger and no transfer of servicing rights between First Investment and EverHome per the written contract titled "Sub-Servicing Agreement" between First Investment and EverHome and the records from the Departments of State of Ohio and Florida thus the reporting of a merger or transfer of servicing to HUD, or the filing of any document with HUD in any context wherein Everhome files said document in Everhome's name and said document relates in any manner to any mortgage owned/serviced by First Investment, in whatever form, paper or electronic, has constituted a false document or documents to support a false or fraudulent claim to HUD by First Investment in violation of 31 U.S.C. § 3729.  Thus, First Investment as mortgagee, servicer with responsible for the actions of EverHome as sub-servicer, and EverHome as a knowledgeable HUD approved servicer in other contexts are both liable and share in the conspiracy for presenting an unknown number of false documents indicating "MERGER"or "transfer of servicing rights" or eligibility for mortgage insurance or subsidy or handling charges to HUD.  Each document filed with HUD as relates to First

Investment held or serviced mortgages by either since the signing of the "Sub-Servicing Agreement", must be considered a false document with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented, and, neither should profit through unjust enrichment from their fraudulent filings.

      152.    **CONCLUSION:** The information presented in this **COUNT 6** makes clear that the actions of Defendants First Investment and EverHome in allowing EverHome to file any documents under EverHome's own name to support continued eligibility and/or participation to the contract for the HUD mortgage insurance where EverHome was not given the rights as servicer were false and/or fraudulent and to invoice HUD for "Subsidy" and "Handling Fees" were false or fraudulent. The Defendants presented or caused to be presented to an agency of the United States (HUD) supporting documents for continued eligibility and/or participation to the contract for the HUD mortgage insurance in anticipation of a possible, existing or future claim for payment mortgage insurance and did present invoices for payment of "Subsidy" and "Handling Fees". The Defendants' supporting documents and invoices as presented by EverHome were false and/or fraudulent and the Defendants knew the documents were false and/or fraudulent. The Defendants had actual knowledge of the information making the documents and subsequent claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information. Any mortgage insurance claims or claims for payment of "Servicing" or "Handling Fees" presented by EverHome to HUD wherein EverHome is not the true holder or servicer since the signing of the "Sub-Servicing Agreement" must be considered as having been acquired under the false and/or fraudulent circumstances and the actions of both Defendants and First Investment

- 61 -

allowing EverHome to submit such documents and/or claims must be considered conspiratorial.

## COUNT 7

153.    Plaintiff repeats and realleges paragraphs 1 - 152.

154.    This count is specific EverHome and to "UNKNOWN MORTGAGE COMPANY A" with its responsibilities as mortgagee and/or servicer where there exists a contract with EverHome to sub-service without merger or transfer of servicing rights and the responsibility for the actions of EverHome as sub-servicer where EverHome is filing documents with HUD in EverHome's name, AND, EverHome's equivalent responsibility for its own actions.

155.    As it appears that there was no merger and no transfer of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the United States Code between EverHome and "UNKNOWN MORTGAGE COMPANY A" per contract for sub-servicing and/or as per other written contracts which may or may not be titled "Sub-Servicing Agreement" between EverHome and the "UNKNOWN MORTGAGE COMPANY A", thus any document filed with HUD or any 235 subsidy or handling charge invoiced to HUD or any claim for insurance benefits under the HUD mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235 mortgages wherein EverHome is named and EverHome is not the mortgagee or true servicer, may constitute a false document to support a false or fraudulent claim to HUD for payment or may constitute a false or fraudulent claim to HUD for payment by EverHome and equally constitute a false document and/or false or fraudulent claim to HUD for payment by "UNKNOWN MORTGAGE COMPANY A"  in violation of 31 U.S.C. § 3729.

156.    Each document filed with HUD in EverHome's name as relates to "UNKNOWN MORTGAGE COMPANY A" held or serviced mortgages by either UNKNOWN MORTGAGE COMPANY A or EverHome since the signing of the "Sub-Servicing Agreement", or equivalent document, must be considered a false document with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

157.    **CONCLUSION:** The information presented in this **COUNT 7** makes clear that the actions of Defendants UNKNOWN MORTGAGE COMPANY A and EverHome in allowing EverHome to file any documents under EverHome's own name to support continued eligibility and/or participation to the contract for the HUD mortgage insurance or for support of a claim or making a claim for "Servicing" or "Handling Fees" where EverHome was not given the rights as servicer were false and/or fraudulent.  The Defendants presented or caused to be presented to an agency of the United States (HUD) supporting documents for continued eligibility and/or participation to the contract for the HUD mortgage insurance in anticipation of a possible, existing or future claim for payment mortgage insurance and/or claims for "Subsidy" or "Handling Fees".  The Defendants' supporting documents and/or claims were false and/or fraudulent and the Defendants knew the documents and/or claims were false and/or fraudulent.  The Defendants had actual knowledge of the information making the documents and subsequent claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information.  Any mortgage insurance or other claims presented by EverHome to HUD wherein EverHome is not the true holder or servicer since the signing of the "Sub-Servicing Agreement" or equivalent agreement must be considered as having been presented under the false and/or fraudulent circumstances.

**COUNT 8**

158.    Plaintiff repeats and realleges paragraphs 1 - 157.

159.    This count is specific EverHome and to "UNKNOWN MORTGAGE COMPANY B" with its responsibilities as mortgagee and/or servicer where there exists a contract with EverHome to sub-service without merger or transfer of servicing rights and the responsibility for the actions of EverHome as sub-servicer where EverHome is filing documents with HUD in EverHome's name, AND, EverHome's equivalent responsibility for its own actions.

160.    As it appears that there was no merger and no transfer of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the United States Code between EverHome and "UNKNOWN MORTGAGE COMPANY B" per contract for sub-servicing and/or as per other written contracts which may or may not be titled "Sub-Servicing Agreement" between EverHome and the "UNKNOWN MORTGAGE COMPANY B", thus any document filed with HUD or any 235 subsidy or handling charge invoiced to HUD or any claim for insurance benefits under the HUD mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235 mortgages wherein EverHome is named and EverHome is not the mortgagee or true servicer, may constitute a false document to support a false or fraudulent claim to HUD for payment or may constitute a false or fraudulent claim to HUD for payment by EverHome and equally constitute a false document and/or false or fraudulent claim to HUD for payment by "UNKNOWN MORTGAGE COMPANY B" in violation of 31 U.S.C. § 3729.

161.    Each document filed with HUD in EverHome's name as relates to "UNKNOWN

- 64 -

MORTGAGE COMPANY B" held or serviced mortgages by either UNKNOWN MORTGAGE

COMPANY B or EverHome since the signing of the "Sub-Servicing Agreement", or equivalent

document, must be considered a false document with a civil penalty of not less than $5,000 and

not more than $10,000 for each such document presented.

     162.   **CONCLUSION:** The information presented in this **COUNT 8** makes clear that

the actions of Defendants UNKNOWN MORTGAGE COMPANY B and EverHome in allowing

EverHome to file any documents under EverHome's own name to support continued eligibility

and/or participation to the contract for the HUD mortgage insurance or for support of a claim or

making a claim for "Servicing" or "Handling Fees" where EverHome was not given the rights as

servicer were false and/or fraudulent.  The Defendants presented or caused to be presented to an

agency of the United States (HUD) supporting documents for continued eligibility and/or

participation to the contract for the HUD mortgage insurance in anticipation of a possible,

existing or future claim for payment mortgage insurance and/or claims for "Subsidy" or "Handling

Fees".  The Defendants' supporting documents and/or claims were false and/or fraudulent and the

Defendants knew the documents and/or claims were false and/or fraudulent.  The Defendants had

actual knowledge of the information making the documents and subsequent claims for payment

false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so

submitted; or acted in reckless disregard of the truth or falsity of the information.  Any mortgage

insurance or other claims presented by EverHome to HUD wherein EverHome is not the true

holder or servicer since the signing of the "Sub-Servicing Agreement" or equivalent agreement

must be considered as having been presented under the false and/or fraudulent circumstances.

- 65 -

## COUNT 9

163.    Plaintiff repeats and realleges paragraphs 1 - 162.

164.    This count is specific EverHome and to "UNKNOWN MORTGAGE COMPANY C" with its responsibilities as mortgagee and/or servicer where there exists a contract with EverHome to sub-service without merger or transfer of servicing rights and the responsibility for the actions of EverHome as sub-servicer where EverHome is filing documents with HUD in EverHome's name, AND, EverHome's equivalent responsibility for its own actions.

165.    As it appears that there was no merger and no transfer of servicing rights as defined by the HUD regulations, the Code of Federal Regulations or the United States Code between EverHome and "UNKNOWN MORTGAGE COMPANY C" per contract for sub-servicing and/or as per other written contracts which may or may not be titled "Sub-Servicing Agreement" between EverHome and the "UNKNOWN MORTGAGE COMPANY C", thus any document filed with HUD or any 235 subsidy or handling charge invoiced to HUD or any claim for insurance benefits under the HUD mortgage insurance as may pertain to any HUD insured mortgages or to any of the Section 235 mortgages wherein EverHome is named and EverHome is not the mortgagee or true servicer, may constitute a false document to support a false or fraudulent claim to HUD for payment or may constitute a false or fraudulent claim to HUD for payment by EverHome and equally constitute a false document and/or false or fraudulent claim to HUD for payment by "UNKNOWN MORTGAGE COMPANY C" in violation of 31 U.S.C. § 3729.

166.    Each document filed with HUD in EverHome's name as relates to "UNKNOWN MORTGAGE COMPANY C" held or serviced mortgages by either UNKNOWN MORTGAGE

COMPANY C or EverHome since the signing of the "Sub-Servicing Agreement", or equivalent document, must be considered a false document with a civil penalty of not less than $5,000 and not more than $10,000 for each such document presented.

167.    **CONCLUSION:** The information presented in this **COUNT 8** makes clear that the actions of Defendants UNKNOWN MORTGAGE COMPANY C and EverHome in allowing EverHome to file any documents under EverHome's own name to support continued eligibility and/or participation to the contract for the HUD mortgage insurance or for support of a claim or making a claim for "Servicing" or "Handling Fees" where EverHome was not given the rights as servicer were false and/or fraudulent.  The Defendants presented or caused to be presented to an agency of the United States (HUD) supporting documents for continued eligibility and/or participation to the contract for the HUD mortgage insurance in anticipation of a possible, existing or future claim for payment mortgage insurance and/or claims for "Subsidy" or "Handling Fees".  The Defendants' supporting documents and/or claims were false and/or fraudulent and the Defendants knew the documents and/or claims were false and/or fraudulent.  The Defendants had actual knowledge of the information making the documents and subsequent claims for payment false and/or fraudulent; or acted in deliberate ignorance of the truth or falsity of the information so submitted; or acted in reckless disregard of the truth or falsity of the information.  Any mortgage insurance or other claims presented by EverHome to HUD wherein EverHome is not the true holder or servicer since the signing of the "Sub-Servicing Agreement" or equivalent agreement must be considered as having been presented under the false and/or fraudulent circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against defendants and prays that this Court:

(i)      Enter judgment against Defendants in each of the above Counts in an amount equal to three (3) times the amount of damages the United States has sustained because of each Defendant's actions, plus a civil penalty of not less than Five Thousand Dollars ($5000) and not more than Ten Thousand Dollars ($10,000) for each document submitted by any Defendant in violation of 37 U.S.C. § 3729;

(ii)     Award Plaintiff William L. Fry the maximum amount permitted by Section 3730(d) of the False Claims Act and/or any other provisions of applicable law;

(iii)    Award Plaintiff William L. Fry all costs of this action, including attorney fees and court costs; and

(iv)    Award any other relief that is just and proper.


Date:   January 16, 2007

                            Respectfully submitted:

                            William L. Fry
                            by Counsel


                         /S/ Malcolm L. Pollard
                         Malcolm L. Pollard, Esquire
                         Pa. Supreme Court Number 34906
                         4845 Westlake Road #119
                         Erie, PA 16505
                         Telephone: 814-838-8258
                         Telecopier: 814-838-8452